ELLIS, Judge.
Plaintiff in this case has instituted suit against the H. M. Stevens Lumber Company, a commercial partnership composed of H. M. Stevens and Julian Stevens, residents of Vernon Parish, Louisiana, and Employers • Mutual Liability Insurance Company of Wisconsin, for workmen’s compensation for permanent and total disability. H.e is claiming the sum of Twenty ($20.00) Dollars per week for the period of his disability beginning September 2, 1947, not to exceed four hundred weeks, together with medical and hospital expenses.
The plaintiff was working under a contract for the defendant partnership, who carried a policy of insurance with the last above-named defendant, and alleged that on or about the 2nd day of September, 1947, while loading or rebinding a load of lumber preparatory to hauling, that the load split or parted and fell upon him, severely injuring him, and injured his left leg, back and chest and other injuries. He is alleging permanent and total disability by reason of the injury to the left leg as a result of this accident.
The defendants deny most of the allegations of the plaintiff’s petition and deny that he is permanently disabled at this time; specifically denying .that the defendant was an employee of the H. M. Stevens Lumber Company, but was, in fact, an independent contractor.
The defendants also allege in the alternative that if plaintiff was not found to be an independent contractor, that he was an employee of the partnership of Lambert and Reese, a partnership composed of LeRoy Lambert and John H. Reese and domiciled in Vernon Parish, Louisiana.
The defendants also affirmatively allege in their answer that under the terms and provisions of the Workmen’s ' Compensation Act of Louisiana, and particularly the provisions of Section 6 of said Act, Act No. 20 of 1914, as amended by Act No. 85 of 1926, that LeRoy Lambert and John H. Reese and their compensation insurer, Globe Indemnity Company, be called as codefendants herein to indemnify the defendants if there should be any judgment in favor of the plaintiff.
Exceptions were filed to this call in indemnity and disposed of and are no longer an issue.
The Lower Court rendered judgment in favor of the plaintiff and against the H. M. Stevens Lumber Company and its insurer in the full sum of $20.00 per week for the period of, plaintiff’s disability, beginning September 2,. 1947 and ending December 31, 1947 with 5% per annum interest on each installment from date due .until paid apd all ,costs of this suit, together with the sum of $130.00 as representing the bill of Dr. Talbert, and reserving to the plaintiff the right to sue for ad ■ ditional medical or hospital expenses that might have been incurred in treating plaintiff’s injury, and further fixing the fees, of the doctors who testified as expert witnesses in the case at the sum ,of $25.00 and taxing same as costs. There was further judgment dismissing the call in indemnity as to LeRoy Lambert and John H. Reese or the partnership composed of them, and as to their insurer, the Globe Indemnity Company.
*510 From this judgment both plaintiff and defendants have appealed.
There is no dispute that the accident to the plaintiff actually did happen as alleged in his petition or that if plaintiff were entitled to recover as prayed for the amount of compensation would he $20.00 per week during the period of disability.
There are three questions before this Court to he decided:
1. Was the plaintiff an employee of the Stevens Lumber Company at the time he was injured or an independent contractor?
2. What is the extent of his disability and to what extent is he entitled to compensation ?
3. Are the defendants, H. M. Stevens Lumber Company, and their insurer entitled to judgment on their call in indemnity against Lambert & Reese and their insurer, Globe Indemnity Company, in the event judgment is rendered in favor of the plaintiff?
Plaintiff was engaged by Stevens Lumber Company to haul lumber from its mill for so much per thousand for a long haul, and a lesser amount per thousand for a short haul, and was also furnished labor at the lumber company’s expense to assist in the loading of heavy lumber and the loading of lumber into railroad cars when it was to be shipped. The plaintiff was to furnish his truck, pay for his own gas, oil and other expenses incidental to the hauling. As the lumber company decided that the plaintiff’s truck could not keep up with the hauling of the lumber, it engaged Reese & Lambert who received the same remuneration and hauled under the same terms as the plaintiff, however, the plaintiff was carried on the payroll of the lumber company and insurance, etc., was deducted from the hauling checks, and ail monies for hauling were paid to him, and under a separate agreement with Reese and Lambert the oil and gas expenses were deducted and the three divided the bill. This agreement was made between the three dumber haulers because some of their hauls were long and some short and they thought it fairer to handle the hauling in this manner, which was immaterial to the company.
It may be fairly, concluded from the testimony in this case that the Stevens Lumber Company pointed out the kind and character of the lumber to be hauled and directed the place of delivery and the person to whom the lumber was to be delivered or whether it was to be loaded in railroad cars, and it clearly had the right to fire or terminate the employment of the plaintiff or Reese and Lambert at any time. The Stevens Lumber Company had the right to control and supervise the hauling and the absolute right to say when and what lumber should be hauled.
Under the facts in this case, the plaintiff was an employee of the lumber company and not an independent contractor. See Litton v. Natchitoches Oil Co., La. App., 195 So. 638, and cases therein cited.
There was some dispute as to whether or not a new arrangement had been made immediately prior to the date of the accident between the lumber company and the lumber haulers but from the evidence we are of the opinion that the new arrangement had not been made with, nor communicated to, the plaintiff so as to change his relationship. The lumber company did discuss a new arrangement with Reese and Lambert just prior to the accident and as to them, possibly it was in effect. The only difference in the arrangement was that the lumber company was no longer to furnish any help in loading or unloading the lumber and they were to carry their own compensation insurance and were to be paid a slight increase per thousand feet of lumber for the hauling. Even this did not change the relationship of employer-employee as no particular lumber or stack or the entire output of the mill was agreed upon to be hauled. In fact, the lumber company still retained the right to control the manner, method and place and the kind of lumber that was to be hauled, and could have fired Reese or Lambert at any time. We are, therefore, of the opinion that they are not entitled to call Reese or Lambert or their alleged insurer in indemnity.
*511 As to the extent of plaintiff’s disability, the lower court found that he had entirely recovered as of December 31, 1947. In this finding, the lower court accepted the testimony of Dr. Joe E. Broyles and Dr. M. W. Talbert in whom the Court expressed great, confidence in its written reasons. Plaintiff is complaining of the injury to his left leg which was lacerated and mashed at the time of the accident and was left with a scar about four inches above and at the inner side of the left knee, the tissue below the scar being depressed for approximately seven inches. The plaintiff testified that due to the weakness in that leg he can no longer operate a lumber truck or load and unload lumber.
Dr. Talbert treated the plaintiff from the time of his injury until December 31, 1947 when he considered the plaintiff to be fully recovered.
Dr. Joe E. Broyles, witness for the defendants, examined him on October 5, 1948, and testified that there was a very small difference in the measurement of the right and left legs; that the plaintiff’s reflexes were normal and that X-rays showed no injury to any of the bones of the leg; that he did find atrophy of the quad-racepe group of muscles on the left side, probably resulting from myositis. On cross-examination he was asked whether the plaintiff, in connection with his lumber hauling and truck driving operations, could perform strenuous, manual labor of loading and unloading lumber off of a truck for as much as eight or ten hours per day, and he answered: “He could do it for a certain period of time. With what he has, atrophy of that group of muscles, he would become tired. I could not see how he could have pain from it.” He estimated plaintiff’s disability at not more than 10%.
Dr. Thomas S. Whitecloud, who testified on behalf of the plaintiff, having examined him on November 2, 1948, testified that he found quite a bit of weakness in the left leg and a difference in the size of the leg as compared with the right, and the left leg seemed to be quite a bit weaker than the right in its ability to adduct, that is, to be pulled hack to the midline after being placed laterally. He also found a difference in the feeling of the skin below the site of the injury which was due to some injury to the cutaneous nerve. He testified that there was a muscular atrophy immediately below the area of the scar which he stated, in effect, was usually due to lack of exercise or continued lack of use. There was more than normal difference in the size of the right and left legs. This doctor further stated that the depressed area indicated either one or two things: either the scar tissue was binding the skin down, or there was atrophy of the normal tissue at that point, and his diagnosis was an injury to the cutaneous nerve supply of the medial portion of the lower left leg and atrophy of the muscles below the scar. He concluded that due to the weakness in this leg plaintiff was unable to efficiently and safely perform the duties of driving a heavy truck or loading and unloading lumber. He estimated the percentage of disability roughly at 25%, which he believed to be permanent.
Plaintiff, in his testimony, states that he attempted to work but could not last and cites different occasions. He could have easily proven this by some of his employees or co-employees. Dr. Reid treated plaintiff before Dr. Whitecloud and he could have taken Dr. Reid’s testimony in the matter. Also, plaintiff reserved the right at the close of the trial to take the testimony of Dr. T. M. Oxford of Shreveport. This he never did.
Taking all of the testimony, there is some atrophy to the muscles as the result of the injury and some injury to the nerve of the skin which affects the sense of feeling in that region and would have no effect on the ability of the plaintiff to work. It really leaves for decision the effect of the atrophy of the muscle.
There is some evidence that probably there is a nerve injury causing the atrophy, however, there is not sufficient evidence in the record to justify a definite conclusion that such exists. We cannot decide a case on probabilities.
*512 The judge of the lower court bases his judgment on the fact that the plaintiff has failed to bear the burden of proof showing total and permanent disability. We believe the judgment to be correct under the evidence in the case and it is accordingly affirmed.