167 So.2d 416 (1964)
Edward DAVIS
v.
Gilbert McKEY.
No. 1489.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1964.
Rehearing Denied October 7, 1964.
Writ Refused December 1, 1964.
*417 C. Cyril Broussard, Joseph F. Monie, New Orleans, for plaintiff and appellee.
Roos & Roos, Sidney G. Roos, New Orleans, for defendant and appellant.
Before McBRIDE, REGAN and YARRUT, JJ.
REGAN Judge.
Plaintiff, Edward Davis, instituted this suit against the defendant, Gilbert McKey, endeavoring to recover the sum of $31,716.90, representing damages for personal injuries incurred by him as a result of a gunshot wound of the left ankle which he asserted was caused by the negligence of the defendant in discharging a .38 caliber revolver without exercising that degree of care required in the use of a dangerous weapon.
The defendant answered and insisted therein that he fired the shot which injured the plaintiff in the course of exerting an effort to defend himself from an assault by James Andrew and his common law wife.
From a judgment in favor of the plaintiff in the amount of $15,359.52, the defendant has prosecuted this appeal.
Prior to the oral argument hereof in this court, the plaintiff died, and his father, George Davis, was substituted for him as party plaintiff in his capacity as provisional tutor of the decedent's minor children and as the administrator of the decedent's estate.
The record discloses that on May 3, 1959, at approximately the hour of 10:20 p. m., the plaintiff was walking near the defendant's bar, which is located in 218 Flake Street in the City of New Orleans, when he was struck in the left ankle by a .38 caliber bullet fired from within the defendant's establishment. The bullet struck the ankle of the plaintiff with such force that it knocked him to the ground and tore the shoe from his foot.
The defendant testified that a short time before the shooting occurred he was engaged in closing his business establishment for the night when a woman known as Bee Andrew refused to depart therefrom. Her son, a minor, entered the defendant's bar and endeavored to persuade his mother to come home. The defendant would not permit the boy to remain therein since he was a minor, and the boy thereafter returned with his stepfather, James Andrew. The defendant related that Andrew had often caused trouble in his bar and therefore his patronage thereof was forbidden.
When Andrew entered the bar, he was ordered to leave by the defendant, and an argument ensued when he refused to do so. The defendant testified that he was then attacked by Andrew and his wife and was forced to initially secure and then fire his pistol in an effort to defend himself. Defendant discharged three shots therefrom: the first and second were fired inside the bar, but the third shot was fired through an open door and struck the plaintiff. The defendant admits that the third shot was fired at Andrew after he had fled from the premises.
As is usual in a case of this nature, the respective versions of what occurred on the night of the "shooting", as related by James and Bee Andrew, materially differ from the defendant's version thereof. In short, their testimony was that an argument ensued between the defendant on the one hand and Andrew and his wife on the other, and that the defendant began firing at Andrew without the occurrence of any provocation therefor. While there are several inconsistencies in their testimony, there were also inconsistencies in the evidence offered by the defendant. The lower court obviously accepted the testimony of James and Bee Andrew as to the manner in which the shooting occurred, and after a careful review of the record we are of the opinion that the trial judge did not commit error in so doing.
*418 We are therefore confronted with established facts which reveal that the defendant, without provocation, fired a dangerous weapon with intent to commit a delict upon one person, but in fact unintentionally shot an innocent third person who was engaged in walking upon a public street. In conformity with the foregoing factual finding, it is quite clear that the person attempting to commit the delict must respond in damages to the injured third person.[1]
The injury caused to the plaintiff by the bullet was rather severe. It passed completely through his left ankle between the tibia and the Achilles tendon. He was treated intermittently at the Charity Hospital, where the injured portion of his body was placed in a leg and foot splint for several months. He then sought treatment from Dr. Byron Unkauf, who found a complete paralysis of the intrinsic muscles of the left foot with loss of sensation and wasting of the sole thereof. Dr. Unkauf testified that the plaintiff had incurred a severed posterior tibia nerve at the level of the ankle and estimated that he sustained as a result thereof a 35 percent disability of the left foot.
The lower court rendered a judgment in favor of the plaintiff for the sum of $15,000.00 plus $359.52 as special damages, and we are convinced that the trial judge correctly considered both the loss of function sustained by the plaintiff and the fact that he was only 28 years of age when the accident occurred. However, we believe that the lower court, in addition to the foregoing, should have considered the financial condition of the defendant in fixing monetary damages.[2] After reviewing the evidence inscribed in the record relative to the defendant's net worth, we are of the opinion that a more equitable award would be $10,000.00, plus the special items of damages incurred by the plaintiff.
For the foregoing reasons the judgment of the lower court is amended by reducing the amount thereof from $15,359.52 to $10,359.52, together with interest and costs as taxed therein, and as amended the judgment of the lower court is affirmed.
Amended and affirmed.
NOTES
[1] Carnes v. Thompson, Mo., 48 S.W.2d 903 (1932).
[2] See Leon v. Jackson, La.App., 122 So.2d 102; Lacaze v. Horton, La.App., 100 So. 2d 252.