180 So.2d 892 (1964)
Charles PFLIEGER
v.
Albert P. HAWS et al.
No. 6218.
Court of Appeal of Louisiana, First Circuit.
December 21, 1964.
On Rehearing November 16, 1965.
Rehearing Denied December 21, 1965.
*893 Martin, Himel, Morel & Daly, by William J. Daly, of Porteous & Johnson, by Parnell J. Hyland, New Orleans, for appellant.
Mary M. Robinson, Baton Rouge, for Dudley A. Guglielmo, etc.
Leonard Greenburg, Houma, Robert N. Ryan, of Bienvenu & Culver, by J. S. Arceneaux, New Orleans, for intervenor-appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.[*]
ELLIS, Judge.
For written reasons assigned the trial court rendered judgment in favor of Mrs. Charles Pflieger, widow of Charles Pflieger, and her two minor children, Jefferson Henry Pflieger and Virginia Evelyn Pflieger, against the defendants, Albert P. Haws, Marquette Casualty Company, John's Trucking Service, Inc., and Canal Insurance Company in solido in the full sum of $8,613.99, one-half thereof for the benefit of said widow individually and the remaining half to said widow, as tutrix of, and for the use and benefit of, her aforesaid two minor children, with legal interest from the date of judicial demand until paid, *894 and in favor of Security Insurance Company, Intervenor, for the sum of $2,205.84 against Mrs. Charles Pflieger and the minor children to be paid from the aforesaid judgment in their favor, comprising compensation payments and medical expenses made by it to Mrs. Pflieger, payable out of the judgment of $8,613.99. From this judgment all defendants appealed.
In this court all defendants filed exceptions of no right or no cause of action. Plaintiff filed answer to these exceptions.
The suit is one in tort arising out of an accident which occurred on June 5, 1961 in which Charles Pflieger sustained physical injuries. Subsequent to the trial but prior to judgment in the District Court, Mr. Pflieger died and his wife and children were substituted as parties plaintiff.
Plaintiff, Charles Pflieger, a truck driver, employed by Duplantis Truck Line, Inc., was ordered by his employer to deliver a heavy piece of oil field equipment, known as a "kelly joint in a rat hole and a kelly bushing", to the Humble Oil Company dock at Point au Chien in Terrebonne Parish. Upon arrival at the dock, the barge on which delivery was to be made had not yet arrived and while waiting, Mr. Pflieger sojourned to a nearby store where he met defendant, Albert P. Haws, who was likewise awaiting the arrival of the barge to deliver a load of "drill collars", heavy pieces of oil field equipment. Neither of the drivers was accompanied by a helper, referred to in the parlance of the trade of oil field workers as a "swamper". Accordingly, it was mutually agreed each would assist the other in unloading their respective trucks. A ramp was provided at the dock landing for loading and unloading barges. This extended from the bayou bank to the barge. The ramp could be raised and lowered by cables supported by two wooden uprights on each side thereof, of an estimated height of ten to twelve feet.
The accident occurred when the drill collars on Haws' truck were being loaded. Haws was operating his truck and winch and Pflieger attached the cable and hook by tying onto the drill collars. The drill collars were then hoisted from the bed of the trailer by Haws manipulating the winch and were maneuvered to clear the uprights so as to lower them onto the barge. Prior to the accident four drill collars, two at a time, had been properly delivered to and positioned on the barge. The parties were engaged in loading two more drill collars when the accident occurred. Pflieger had fastened the cable around the drill collars and Haws had by the use of the cable and winch raised the collars to load same. Pflieger, walking off the ramp, heard what he described as a peculiar noise and, sensing danger, dove to the ground by the bayou bank. The load fell. In consequence, the injuries sued for resulted to plaintiff's left foot.
In this court all defendants have filed identical exceptions of no cause or right of action as follows:
"That the said petition, claim action and demand, as well as the intervention herein filed, disclose no cause of action and no right of action in that the allegations made fail to state a legal claim for damages, and on the contrary, reveal that plaintiff's remedy, if any, ever existed, was solely and exclusively under the Workmen's Compensation Act of Louisiana, and plaintiffs and intervenor have no right to recover in tort. (La.R.S. 23:1032; Spanja vs. Thibodaux Boiler Works, 2 So.2d 668 (Ct.App.La., Orl., 1941); Dixon vs. Herrin Transportation Co., 81 So.2d 159 (Ct.App.La., 2d Cir., 1955); Humphreys vs. Marquette Casualty Co., 235 La. 355, 103 So.2d 895 (Supreme Court of Louisiana, 1958); Casualty Reciprocal Exchange vs. Richey Drilling & Well Service, 137 So.2d 127 (Ct.App.La., 3rd Cir.) 1962)."
In view of the fact that the above exception was filed in this court and after *895 a complete trial on the merits in the District Court, the exception which is really one of no cause of action would properly be considered not on the petition alone but upon the evidence introduced in the record prior to the filing of this petition.
In the case of Bartholomew v. Impastato, 12 So.2d 700, the Orleans Court of Appeal with Judge, now Justice, McCaleb as the organ of the court stated:
"Counsel's appreciation of the procedure applicable to civil trials in Louisiana is correct. An exception of no cause of action addresses itself to the sufficiency in law of the petition and exhibits attached thereto. It is triable on the face of the papers. See Trumbaturi v. Katz & Besthoff, 180 La. 915, 158 So. 16, Rome v. London & Lancashire Indemnity Co., 181 La. 630, 160 So. 121 and other cases, too numerous to mention. In determining whether the exception is well founded, the court does not consider the evidence submitted in support of the petition, except in cases where the exception is filed after evidence has been taken and the allegations of the petition have been enlarged by such evidence which has been received without objection. See Bell v. Globe Lumber Co. Ltd., 107 La. 725, 31 So. 994; McQueen v. Tremont Lumber Co., La.App., 151 So. 683 and Anderson v. Harvey & Jones, La.App., 154 So. 495."
Again, in Rheuark v. Terminal Mud & Chemical Co., 213 La. 732, 35 So.2d 592, the Supreme Court of Louisiana held that "Testimony is not admissible to show no cause of action, but if it is introduced without objection, it has effect of enlarging the pleadings and may be considered as through written in the petition."
Again, in Janvier & Co. v. Fritz, 180 So. 172, Orleans, now Fourth Circuit Court of Appeal, followed the rule when it held that an exception of no cause and of no right of action, which was filed in appellate court after record had been made up, would be considered in connection with allegations and proof in record, as distinguished from similar exception filed in limine which is addressed to allegations of petition alone.
In the case of Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257, the Supreme Court of Louisiana, in considering a complaint of counsel for the plaintiff that the trial judge was without authority to consider, on the hearing of the exception of no right of action, evidence showing that Jones was without power to offer to sell the real property belonging to defendant corporation for the reason that the question of Jones' authority, or his lack of it, was a matter for the merits of the case, held:
"This contention is without merit because (1) the evidence, which was received at the hearing of the exception without objection, had the effect of enlarging the pleadings, Rheuark v. Terminal Mud & Chemical Co., 213 La. 732, 35 So.2d 592, compare Duplain v. Wiltz, La.App., 174 So. 652, * * *."
In view of the fact that it would be necessary to consider the entire record in this case, we will not consider or decide the case on an exception of no cause or right of action. A decision on the merits would dispose also of the exception.
Without question, the evidence tendered on the trial of the case conclusively shows Pflieger at the time he was injured must be categorized as an employee pro hac vice of John's Trucking Service, Inc., and recovery for his injuries sustained is exclusively restricted to relief under the Workmen's Compensation Act of Louisiana, LSA-R.S. 23:1032; Spanja v. Thibodaux Boiler Works, La.App., 2 So.2d 668; Dixon v. Herrin Transportation Co., La.App., 81 So.2d 159.
*896 At the time plaintiff was injured he was engaged in an act unloading a truck belonging to John's Trucking Service and was in no way performing any duty connected with his employer.
In Dixon v. Herrin Transportation Company, La.App., 81 So.2d 159, at page 164, the Court said:
"In the Spanja v. Thibodaux Boiler Works, Inc., case, supra, the opinion clearly distinguishes the applicable principle from that which was asserted by the Supreme Court in Rooney v. Overseas Ry., Inc. [173 La. 183, 136 So. 486], supra, on the ground that Spanja, in pursuit of the activity in which he was engaged at the time of the accident, was not performing any work which was connected with the responsibility of his employer, The Texas Company, but was assisting with a job which was exclusively an undertaking of Thibodaux Boiler Works, Inc. Under these circumstances the court held that Spanja had become an employee, pro hac vice, of the Thibodaux Boiler Works, Inc., and as a result the fellow servant doctrine applied. The distinction from the holding in Rooney v. Overseas Ry., Inc., supra, is obvious for in that case the employee, Rooney, had simply undertaken a job which was clearly in the scope of the business of his employer and was in no sense or circumstance connected with the work of the Overseas Ry.
"Similarly, in Speed v. Page [59 So.2d 138], supra, the holding of this court, as well as of the Supreme Court [222 La. 529, 62 So.2d 824], was based upon the principle that Speed was performing work which was a part of his employer's business. In the instant case, the facts appear that it was the responsibility of the defendant to call for, load and transport the drum of cleaning fluid and the other articles comprising that shipment. All of these activities were directly in line with the defendant's business and were in no sense a part of the business of plaintiff's employer, the Cedar Grove Methodist Church.
"The conclusion is inescapable that plaintiff at the time of the accident was not engaged in any work connected with his employment by the church; he therefore must be regarded under the rule announced in Spanja v. Thibodaux Boiler Works, Inc., supra, as an employee pro hace vice of the defendant. Under such circumstances, the rights and remedies provided by the Workmen's Compensation Act are exclusive. LSA-R.S. 23:1032 provides:
"`The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.'"
Learned counsel for plaintiffs and intervenor contend the distinction made by the Court in Spanja v. Thibodaux Boiler Works wherein the principle announced in the Rooney case was differentiated is equally applicable to the facts of this case for the reason that Pflieger undertook to assist Haws in unloading the latter's trailer for the express purpose of obtaining Haws' assistance in unloading Pflieger's employer's truck, and consequently such activity was clearly in the scope of the business of Pflieger's employer.
Factually, however, at the time plaintiff was injured he was performing work nowise connected with his own employer's business as at that time they were unloading Haws' truck.
In Paul v. Traders and General Insurance Company, La.App., 127 So.2d 801, the *897 defense here interposed was not raised nor passed upon by the court.
We observe that under LSA-R.S. 23:1044 it is provided:
"A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter."
The record reflects no evidence of any kind was tendered to rebut this presumption. As plaintiff was employed in rendering service to one engaged in a business covered by the Chapter, the presumption of the employee's status must be given effect.
For the above and foregoing reasons, the judgment of the lower court is hereby annulled, set aside and reversed and it is ordered, adjudged and decreed that the plaintiffs' suit, as well as the intervention filed by Security Insurance Company, is dismissed at their cost.
Reversed.

ON REHEARING.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Upon application of intervenor, Security Insurance Company, and plaintiff-appellees, we granted rehearings in this cause limited to said applicants' claims against defendant, Albert P. Haws and his insurer, Marquette Casualty Company. In our initial opinion we held that plaintiff, Charles Pflieger, was an employee pro hac vice of John's Trucking Service, Inc., therefore his remedy was solely for workmen's compensation benefits. On this premise we dismissed plaintiff's tort action against all defendants. In so doing, as correctly pointed out by applicants, we erroneously dismissed plaintiff's demand against Haws individually.
While our workmen's compensation act completely immunizes the employer from a tort action by his employee in those instances wherein its provisions are applicable, and limits the employee to recovery of compensation benefits from the employer, it does not, however, prevent a tort suit for the same injuries against third persons with whom the injured employee has no employer-employee relationship. The employee's rights against such third persons are preserved by the act and it is settled jurisprudence that an injured employee may bring suit against a fellow employee whose tort resulted in the injuries suffered. Kimbro v. Holladay, La.App., 154 So. 369; Vidrine v. Soileau, La.App., 38 So.2d 77; Adams v. Fidelity and Casualty Co. of New York, La.App., 107 So.2d 496; Bordelon v. Great American Indemnity Company, La. App., 124 So.2d 634.
Haws now contends that he could not be a fellow-employee since he, himself, was not an employee of John's Trucking Service, Inc. He contends he was an independent contractor hauling for John's Trucking Service, Inc. However, we found in our original opinion that Charles Pflieger was an employee pro hac vice of John's Trucking Service, Inc.not an employee of Haws. It is true that Haws leased his truck to John's Trucking Service, Inc., but the lease agreement provides, in accordance with requirements of the Public Service Commission, that the leased truck "shall at all times be under the supervision and control of the Lessee. * * *" The lease further provides that the lessee's terminal in Houma, Louisiana, would be managed by Albert Haws at a salary of $75.00 per week, and that "all personnel, including lease drivers are salaried by John's Trucking Service, Inc., Morgan City, La." The record contains testimony from which it might be inferred that Haws may not have been operating in strict accordance with the provisions of the lease approved by the Public Service Commission, and perhaps that the lease itself was in the nature of subterfuge intended to make it *898 possible for Haws to operate under the permit issued to John's Trucking Service, Inc. However, we cannot speculate on these matters, and conclude that the final signed lease is the more reliable evidence of the relationship between the parties. The fact that the truck was owned by Haws does not necessarily place him in the category of an independent contractor. See Middleton v. H. M. Stevens Lumber Co., La.App., 46 So.2d 508; Litton v. Natchitoches Oil Mill, La.App., 195 So. 638. We conclude, therefore, Haws was the employee of John's Trucking Service, Inc. and, as such, the fellow-employee of plaintiff.
Consequently, it becomes necessary to review the record and dispose of the alleged liability of Haws individually, and the incidental issues of contributory negligence, assumption of risk and joint venture raised by Haws and his said insurer in bar of plaintiff's claim against said appellee. In granting these rehearings we preserved plaintiff's and intervenor's claims against defendant Marquette Casualty Company for whatever value such reservation may possess. Nevertheless, we have stayed all proceedings against said insurer upon a motion by the Commissioner of Insurance of the State of Louisiana representing that Marquette Casualty Company is in rehabilitation. An insurance company in rehabilitation cannot stand in judgment. Scott v. Baton Rouge Bus Co., La.App., 118 So.2d 486.
As stated in our original opinion, the ramp provided at the dock to facilitate loading and unloading of barges was constructed so that it could be raised and lowered by cables supported by two upright pilings on each side of the structure. The pilings were spaced just far enough apart to permit a truck to be driven onto the ramp between them.
Haws positioned the "float", a flat-bed trailer, containing the drill collars, near the ramp, detached the truck or tractor therefrom and prepared the gin poles as a hoist to raise the collars from the "float" and unload them onto the barge. According to the record the gin poles are in effect two large heavy pipes secured to each side of the bed of the truck and elevated in the form of an inverted "V" to serve as a hoist when used together with a winch and cable. Haws and Pflieger placed the gin poles in proper position (almost upright) and joined them together at the top with a sheave or "hairpin" to support the line or cable. They then ran the line or cable from the winch drum on the bed of the truck through the sheave from whence it could be lowered as desired or necessary. To the end of the cable there was an attached tail chain and hook by which means the cable was secured to the load to be moved. In position, the gin poles extended at a slight angle approximately 12 feet above and a short distance beyond the rear end of the truck so that an attached load could be lifted and lowered clear of the vehicle.
At the time of the accident the barge had arrived and docked to take on the additional cargo on the waiting trucks as well as that of a third truck being driven by one Carl Norton. Defendant Haws was operating his truck and winch, and plaintiff Pflieger was assisting by fastening the lift cable to the drill collars, giving Haws voice and hand signals for lifting the load and moving the truck into proper position to deposit the drill collars on the barge.
The drill collars were each approximately 30 feet in length and weighed approximately 100 pounds per foot. Two were loaded in each operation. When the accident occurred, four collars had been loaded and the third pair was in the process of being placed on the barge. The loading operation was described differently by Haws and Pflieger. Our esteemed brother below resolved this discrepancy by concluding the testimony as a whole supported the version of the loading procedure testified to by Pflieger and corroborated to some extent by the testimony of the disinterested witness, Norton. Upon our review of the testimony we are in complete accord with *899 the factual findings of our brother below in this respect.
According to the preponderance of testimony the loading operation was performed in several steps substantially in the manner hereinafter indicated. Haws would back his truck to the float on which the drill collars rested. Pflieger then tied the cable to a pair of drill collars, secured the hook and signaled Haws to lift slightly to test the load balance. If the collars were properly balanced he would then signal Haws to lift higher so that the collars could be transported while suspended from the gin poles by means of the cable. If the load was not properly balanced Pflieger gave Haws the sign to lower the collars back onto the float so that the cable could be adjusted. Upon determining the load to be balanced, Haws would drive the truck forward away from the float, line the truck up with the ramp and then back onto the ramp between the pilings on each side. The gin poles were not sufficiently long to permit hoisting the load over the pilings consequently Pflieger maneuvered the suspended collars over the pilings by attaching the cable slightly off center so that one end of the collars would pass over the pilings following which Pflieger manually lifted the lower end over. When the collars were placed in position over the pilings, Haws, on signal from Pflieger, backed the truck between the pilings onto the ramp at which time Pflieger stepped onto the barge, gave Haws the signal to lower the load to the barge deck and positioned the collars on the barge with a crowbar as they were let down by Haws.
In lowering the third pair of drill collars in the manner shown, the operation had progressed to the point the load was in place beyond the pilings suspended in the air. Pflieger then started toward shore to clear the ramp so Haws could back the truck between the uprights. When Pflieger was within two steps of being clear of the ramp he signaled Haws to commence backing up. At this instant Pflieger detected an unusual noise behind him and simultaneously observed the truck was being moved forward instead of backward. Instinctively sensing danger, he dove forward toward the rear of the truck intending to get underneath the vehicle for protection. As Pflieger hit the ground in the vicinity of the left rear wheel of the truck the drill collars fell, one end thereof striking Pflieger's left foot and ankle.
Defendants maintain the accident occurred because of Pflieger's negligence in improperly tying the cable so that it slipped and came loose from the load and also because of Pflieger's remission in giving an improper signal. In the alternative Pflieger is alleged to have been contributorily negligent in said respects and to have assumed the risk of injury by voluntarily remaining in a place known to be dangerous.
Although Haws admittedly remained in the truck and was unable to see what Pflieger was doing, he nevertheless stoutly maintains Pflieger imprudently attached the cable by wrapping the line around the collars with only a single loop. On this basis it is contended that when Haws backed up toward the ramp the drill collars struck the uprights causing slack in the cable which permitted the hook to become loose and the load to fall. In this regard, Haws testified that after the accident he examined the cable and found the hook at the top of the gin poles. On the other hand, Pflieger maintained he wrapped the cable around the collars in a double loop and then secured the hook. He further testified that following the accident he noted the cable was still properly attached to the drill collars. With respect to this important issue, Pflieger is corroborated by Norton who stated, in effect, that whereas he did not see the actual accident he was on the barge about 150 feet away talking with the skipper of the boat. Norton had witnessed the loading of the first pair of drill collars and observed it was handled substantially as hereinabove set forth. He further stated that upon hearing yells he immediately ran to the scene and found that his own helpher or "swamper" *900 who was standing nearby had been knocked into the water. At first he thought it was his assistant who had been injured. Norton observed the cable was still secured to the drill collars in a normal manner. While he noted some slack in the cable, his testimony leaves no doubt the accident did not occur as a result of an improperly attached load.
On this most important issue we approvingly quote the following observations by our esteemed colleague below:
"We have also noted, in evaluating the evidence, important inconsistencies in the testimony of Mr. Haws regarding plaintiff's method of fastening the cable to the load. Haws stated (tr. p. 152) he did not pay any attention as to how the load was raised, viz:
"* * * I could see some, but I couldn't tell exactly what he was doing.'
and
"I didn't pay attention. He was wrapping it. He was an experienced man.'
Later, however (tr. p. 154) he testified concerning the cable:
`it was wrapped one time.'
It is difficult, if not impossible, to understand how Mr. Haws could know that the cable had been wrapped `only one time' if he did not pay any attention while the wrapping was being done, and, after the load fell (and according to his testimony) the hook was off the collars and up in the air. We feel that the testimony of Haws in this, as well in other respects, presents inexplicable discrepancies.
Pflieger himself testified:
`I would take the end of his line and wrap the drill collars with a double wrap.' * * * (tr. p. 37)
`I wrapped them as close to center as I thought they should be and made a double wrap and hooked the tail chain hook back into the pulley line of the winch.' (Tr. p. 57)
`It hooked to the cable this way. I wrapped the end of the cable over the two collars twice one crossing the other and hooked the hook back into that so the weight pulled it tighter. It can't slip.' (Tr. p. 63)
That method described by plaintiff Pflieger was considered a proper one by defendant's witness John Fernandez of John's Trucking Service, Inc. (tr. pp. 81, 82)
Considering all the testimony, we must disregard the opinions of defendant Haws relative to the proper method of fastening the cable to the load (tr. pp. 138, 142), and find as a fact that the method used by plaintiff Pflieger in fastening the cable to the drill collars was proper and not negligent."
As did our learned brother below, we find we must likewise disagree with defendants' contention that Pflieger was negligent in remaining in a place of danger or that he assumed the risk of injury by staying in a perilous position by not waiting until he had cleared the ramp before signaling Haws to back the truck between the pilings. By mutual agreement it was Pflieger's task to guide the load over the uprights. Having successfully done so, it would appear there was no danger to be anticipated at this time if Haws followed Pflieger's signals. The signal to back up if obeyed would have correctly positioned the load over the barge away from Pflieger. It is suggested that Pflieger should have cleared the ramp before signaling Haws to back uppresumably because by so doing Pflieger exposed himself to the risk of being run over by the truck. Apparently Pflieger had no such apprehensionmoreover such presumption is of no concern in the instant case as the accident did not occur in that fashion. To conclude *901 Pflieger should have anticipated injury from a falling load under the circumstances is tantamount to holding he should foresee that Haws would go forward and cause the load to drop rather than proceed backward in response to his signal. Regarding this factual issue Pflieger testified that upon observing the truck go forward instead of backward and hearing the noise behind him, he thought perhaps the brakes on the truck had slipped.
Haws concedes that in handling the collars one end struck the uprights causing slack in the line. He maintains, however, this occurred before the collars were lifted over the pilings and attributes the resulting slack to the fact that Pflieger wrapped the cable around the collars with only one turn instead of two.
The learned trial judge concluded that Haws either caused the truck to move without receiving a signal from Pflieger or that upon receiving the signal to back up Haws went forward instead, thus causing the high end of the drill collars to come back between the uprights. He further opined this occurred at a time when Pflieger was in a relatively safe position proceeding away from the source of possible danger. He further found that if Haws had heeded Pflieger's signal to back up, if it was given, or if he had done nothing until receiving Pflieger's signal which Haws himself did not recall seeing or hearing, the accident and resulting injury to Pflieger would not have occurred. In these findings we concur.
Our worthy colleague below seemed to entertain some doubt whether Pflieger had given the signal to back up and Haws proceeded contrary thereto or whether Haws proceeded before receiving any signal at all from Pflieger. Pflieger's uncontradicted testimony is that he did give the signal to back the truck onto the ramp. We conclude Pflieger did in fact give the signal but for some unexplained reason Haws inadvertently disregarded the sign and negligently drove or permitted the truck to move ahead instead of to the rear. It is significant that counsel for Haws concedes in brief that the signal to back up was given by Pflieger. We are also in agreement with the finding of the trial court that irrespective of whether Haws did or did not in fact see or hear the signal, he was negligent in moving or permitting the truck to proceed forward under the circumstances shown. He must be charged with knowledge of Pflieger's presence on the ramp and that any sudden, unexpected maneuver on his part would expose his associate to a risk not anticipated.
Our worthy colleague of the trial court also found that Haws was operating a truck with defective hoisting equipment which had slipped on previous occasions. Nothing in the record, however, justifies the conclusion the hoist or cable slipped because of faulty mechanism. The mishap occurred because of a human errorthat of Haws in moving ahead instead of backward.
We also find that our esteemed brother below applied the doctrine of res ipsa loquitur, placing on defendant the burden of exculpating himself from the presumption of negligence arising therefrom. We need not herein consider the propriety of such determination considering our finding that plaintiff has proved his claim by affirmatively establishing defendant's negligence by a fair preponderance of evidence. Thus, the burden thrust upon defendant herein resulted from the weight of the evidence adduced by plaintiff rather than by reason of applicability of the doctrine of res ipsa loquitur.
We find no merit in defendants' contention that Haws and Pflieger were engaged in a joint venture therefore Pflieger may not recover for any injuries resulting from the operation. The fact that Haws and Pflieger agreed to assist each other transfer their respective loads from their trucks to the barge does not constitute both operations joint ventures. In our initial opinion we held Pflieger became the *902 employee pro hac vice of Haw's employer. Had they commenced unloading Pflieger's truck Haws would have assumed a similar relationship with Pflieger's employer. Each job to be performed was for the separate, individual benefit of their respective employers. As separate undertakings they were not joint ventures. See Vogt v. Hotard, La.App., 144 So.2d 714.
Neither do we find any merit in defendant's plea of contributory negligence. In support of this position defendants cite several cases including Johnson v. New Orleans Terminal Co., 154 La. 515, 97 So. 795, wherein the hook at the end of a swinging chain suspended from a derrick struck plaintiff who stepped from a place of safety into the path of the chain. The court therein held plaintiff guilty of contributory negligence since the swinging chain was obvious to any one at the scene. Dallas v. Crescent Forwarding & Transp. Co., La.App., 13 So.2d 113, also cited by defendants, involved a bystander injured by a bale of cotton. Therein, the plaintiff, who was familiar with the procedure employed in unloading bales, remained in a place of extreme danger without looking and was struck when a bale of cotton bounced the wrong way. The court found plaintiff guilty of contributory negligence because he "knew all about the risks which were involved, but deliberately went into the danger zone and exposed himself to those risks and did not watch to see what was going on about him."
In the cited instances recovery was properly denied because under the circumstances each plaintiff had reason to anticipate the occurrence of the accident or deliberately stepped into an area known to be dangerous. We find the cited authorities distinguishable from the case at bar. Nothing in the present record suggests Pflieger could reasonably anticipate an accident of the type which occurred. While plaintiff remained in an area of possible potential danger he could reasonably expect Haws to wait for his signal and comply therewith when given. He had no reason to anticipate Haws would allow the truck to move forward. Having no reason to foresee the hazard which occasioned his injury, Pflieger was not contributorily negligent. Neither did his conduct constitute assumption of risk as contended by defendants. Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417; Paul v. Traders & General Insurance Co., La.App., 127 So.2d 801; Vogt v. Hotard, La.App., 144 So.2d 714.
There remains the question of quantum. Dr. Philip Cenac, General Practitioner, testified he first attended Pflieger on June 5, 1961, the date of the accident. X-ray examination of the foot disclosed basal fractures of the second and fourth metatarsals of Pflieger's left foot; fracture of left proximal phalanx of the left great toe; considerable soft tissue injury, laceration of the skin, subcutaneous bleeding and swelling of the left foot and ankle. Dr. Cenac removed the nail of the great toe, cleaned and debrided the area, sutured the lacerations and splinted the foot. He prescribed antibiotics and sedatives. In his opinion the injury was extremely painful. Plaintiff was kept in the hospital for six days following which he was sent home for bed rest with instructions to keep the injured member elevated. When the soft tissue injury healed the foot was put in a short leg cast on June 28, 1961. Subsequently a walker was attached to the cast to enable the patient to walk while the foot remained thusly immobilized. On August 18, 1961, the cast was removed. The fractures healed without incident but the subcutaneous tissue began to scar causing the foot to remain damp and infection to set in between the patient's toes. Dr. Cenac also observed an absence of dorsalis pedis pulse indicating a type of dystrophy which increased Pflieger's pain. This latter development prompted Dr. Cenac to refer the patient to Dr. Craighead, a specialist who examined plaintiff on October 17, 1961, and recommended a sympathectomy or *903 nerve cutting operation which was performed October 23, 1961. The aforesaid surgery terminated the pain and accompanying spasm resulting from the loss of pulse thus giving the patient relief. The sympathectomy did not, however, restore pulse to the affected foot. Pflieger improved considerable following the operation and was ultimately discharged by Dr. Cenac on January 30, 1962. Dr. Cenac rated the patient as having a 10 to 15% permanent disability of the affected member. In a report appearing of record, Dr. H. R. Soboloff, who also examined Pflieger, rated the patient's disability as a 5 to 10% permanent impairment of the left foot and ankle.
The trial court awarded Pflieger $5,000.00 for personal injuries, medical expense in the sum of $945.84, loss of wages in the sum of $2,662.15 and transportation charges in the sum of $6.00 incurred in connection with the examination by Dr. Soboloff.
The amount of medical expense is stipulated. The loss of wages and transportation charge are fully established by the record. Considering the nature and extent of Pflieger's injuries, the permanent partial disability of the foot resulting therefrom and the pain experienced as a result of the injuries, we deem the award of $5,000.00 for his injuries allowed by the trial court does substantial justice between the litigants.
As allowed by the trial court, intervenor, Security Insurance Company, is entitled to recover of appellant Albert P. Haws the sum of $2,205.84 comprising compensation payments in the aggregate of $1,260.00 and medical expense totaling $945.84 admittedly paid by said intervenor.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed our initial decree is amended to affirm the judgment of the trial court in favor of Mrs. Charles Pflieger, widow of the late Charles Pflieger, and her minor children, Jefferson Henry Pflieger and Virginia Evelyn Pflieger, against defendant, Albert P. Haws, in the full sum of $8,613.99, one-half thereof for the benefit of the said widow individually, and the remaining one-half to said widow as tutrix of said minors, together with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
It is further ordered, adjudged and decreed Intervenor, Security Insurance Company, shall recover out of the judgment awarded plaintiffs the sum of $2,205.84.
Amended and rendered.
NOTES
[*] Due to the death of HERGET, J., prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by ELLIS, LOTTINGER, LANDRY and REID, JJ.