HOOD, Judge.
Mr. and Mrs. Willy J. Bernard, Jr., instituted this action for damages for personal injuries which were sustained by Mrs. Bernard as the result of a motor vehicle collision. The suit was instituted against Magdaline Castille and her liability *732 insurer, United States Fidelity and Guaranty Company. After trial on the merits, judgment was rendered by the trial court in favor of plaintiffs, awarding Mrs. Bernard $30,000.00 for her injuries, and awarding Mr. Bernard $5,620.30 as special damages. Defendants have appealed.
The sole issue presented on this appeal is whether the award made to Mrs. Bernard by the trial judge is excessive. Defendants contend that it should be reduced, while plaintiffs contend that it should not be disturbed.
The accident which precipitated this suit occurred on August 16, 1964. Mrs. Bernard was driving through an intersection of city streets in New Iberia on that date, and while in the crossing the right side of her car was struck by an automobile being driven by defendant Magdaline Castille. The defendants admitted liability in the trial court and the case was tried solely on the issue of quantum.
The evidence shows that as a result of this collision Mrs. Bernard sustained injuries consisting of a laceration of her chin, contusions of her chest wall and back, a large bruise or hematoma on her left leg just below the knee, and injuries to her right foot. The injuries to her right foot consisted of fractures of the first and second metatarsal bones and a fracture of the cuboid. She was examined by Dr. L. O. Broussard on the date of the accident and has been treated by him periodically since that time. She also has been under the treatment of Dr. Guy J. Dunning since April 7, 1965. Dr. Oscar M. Alvarez, an internist, treated her for pulmonary embolism for about two months, beginning on August 27, 1964. And Dr. Jack Wick-strom, a professor of orthopedic surgery at Tulane, examined her twice.
The evidence shows that within one month after the accident plaintiff had recovered fully from all of her injuries, except the injury to her right foot. She contends that the injury to that foot is painful and disabling, and that it is permanent. She was hospitalized initially for about four weeks, from the date of the accident until September 14, 1964. She was hospitalized again for a few days beginning on April 21, 1965, when surgery was performed on her foot. And, she was hospitalized a third time for about a week beginning on June 14, 1966, when surgery was again performed on her foot.
This case was tried originally on April 5, 1966, and judgment was rendered by the trial court on June 23, 1966. After judgment, all parties applied for a new trial on the ground that Mrs. Bernard had undergone surgery to her foot after the trial had been concluded. The trial judge granted a new trial, limited to the taking of the deposition of Dr. Guy J. Dunning, the orthopedist who had performed this additional surgery. The deposition of Dr, Dunning was taken on August 29, 1966, and was filed in the record. The trial judge however, refused to set aside or modify the original judgment.
Mrs. Bernard was 53 years of age at the time the accident occurred. She is married, she is the mother of six grown children and she has 21 grandchildren. Prior to the date of the accident she was active in her community, and she had had no prior difficulty with her right foot. She testified that she suffered pain in her foot, back and abdomen for several weeks after the accident, and that she was frightened and suffered “terrific pain” when she developed an embolism about nine or ten days after the accident occurred. She testified that since the accident she has never been comfortable in a pair of shoes, and that she recently developed pain in her groin and in the big toe of her right foot. She stated that frequently her foot swells after she has walked or stood on it for extended periods of time, that she has had to curtail her activities because she gets tired more easily than she did before the accident, and that she now does about one-third of what she did before she injured her foot
*733 Dr. Broussard, a surgeon, testified that Mrs. Bernard was in severe pain immediately after the accident, and that he administered narcotics to relieve her pain for a little more than three weeks. He performed surgery on August 21 to reduce the fractures in her foot, which included the inserting of a metal pin in one of the hones, and her foot was then placed in a cast. On August 25, she developed a pulmonary embolus to her right lung, which he stated is “quite painful.” Anticoagulants were administered by Dr. Alvarez for this embolism and she completely recovered from it within five days, although the doctor continued to give her anticoagulants until she was discharged from the hospital. She was started on ambulation a week before she left the hospital. The cast was removed on November 4, 1964, and by November 30, 1964, or about three and one-half months after the accident, she was walking without a cane or a crutch.
On December 16, Dr. Broussard noticed a bony prominence on the inner aspect of her foot, but he stated that “she was still able to walk without much pain,” and that “we were quite satisfied with how she was doing.” This prominence gradually increased and became more painful until April 9, 1965, when Dr. Broussard referred her to Dr. Guy J. Dunning, an orthopedic surgeon. Dr. Dunning performed surgery on her foot in which he “shaved off this excess bone.” Dr. Broussard stated, however, that after that operation, she continued to limp and she still had a prominence of the bone. The doctor felt that at the time of the trial this bony prominence in her foot was at least as large as it was before surgery was performed in April, 1965.
Dr. Broussard further testified that at the time of the trial, in April, 1966, the fractures of the bones of the foot had healed “with very good position of fracture,” and that “there was complete union and good position of fractured metatarsal bones and tarsal bones.” He stated, however, that Mrs. Bernard’s foot turns downward, causing her to have pain in her hip and swelling in her foot. He stated that she will have to wear an orthopedic type shoe, that further surgery may be necessary, and that she has a 30 to 45 percent disability in her foot.
Dr. Dunning, the orthopedic surgeon who has treated her since April 7, 1965, testified at the original trial, and as we have already pointed out, his testimony was also taken later by deposition. At the original trial he stated that on April 21, 1965, he resected the medical aspect of the first cuneiform bone and a portion of the navicular of Mrs. Bernard’s right foot to remove the bony prominence on her foot and thus to relieve her from the discomfort which she suffered when wearing a shoe. He thought she did well following surgery, and that there was some improvement, although it did not correct the turning in or pronation of her foot. An examination made on March 31, 1966, shortly before the original trial, however, showed that the area of the foot at the site of the operation was a little larger, and he explained that this may have been caused by swelling or from an increase in the size of the bone. He felt that she would continue to have trouble with her foot, that her foot tends to pronate inward, and that it might be necessary to fuse these arthritic joints at a later date. In his opinion she had a 15 percent disability of her right foot at the time of that examination. He testified that the purpose of fusing the joints is “to prevent motion” and thus “to reduce pain,” that the fusing of such joints would not restrict her motion appreciably, and that “it wouldn’t interfere with the motion.” He did not recommend surgery at the time of the original trial, in April, 1966, because he stated that he had not exhausted other possibilities of relieving her discomfort.
Dr. Jack Wickstrom examined Mrs. Bernard on October 26, 1965, and again on February 28, 1966. He stated that she has a deformity of her foot because of the prominence of a bone, but that it is not a disfigurement. When he last saw *734 her she limped and her foot was externally-rotated. He found that the shoe she was wearing was pressing on the first tarsal interosseous nerve, and he stated that if she continued to have pain he would recommend that additional bone be removed from her foot and that the joints between the tarsals and metatarsals be fused. He testified that if the joints are fused then “we should be able to get rid of the pain ■on fatigue.” He felt that because of the -pain which she suffered she had a 30 percent residual disability of the foot, and that she could not eliminate the protruding hone or the pain without an operation.
A private detective, employed by defendants, took moving pictures of Mrs. Bernard on December 11, 1965, while she was walking to and from her automobile on the streets of the town in which she lived. Mrs. Bernard, of course, was unaware of the fact that these pictures were being taken. They show that on the occasion when these pictures were taken she walked without a limp and without any indication that she suffered pain or disability in her right foot.
Mrs. Bernard has been driving her automobile without difficulty since the accident occurred. She stated that in January, 1965, or about five months after the accident, ■she and her husband went to Yucatan, and •she noticed then that she got very tired '“after walking for a little while.” Since that time she has made three or four other similar trips, the last one being to Mexico in January, 1966. She stated that •on that trip she “was very uncomfortable, .and at the end of the day I could not get ■my shoes on.” She also testified that in returning from her last trip to Mexico she noticed for the first time a pain in her groin and in the great toe of her right foot. She informed Dr. Dunning of the fact that she developed the pain in her groin after she “had done a lot of walking” in Mexico, and he explained that if she has a protective limp it will produce some muscle spasm in that area.
After considering the evidence, the trial judge concluded “that Mrs. Bernard has been permanently injured and that her foot condition will gradually deteriorate.” Judgment was rendered, therefore, awarding her $30,000.00 for the injuries which she sustained.
After the trial had been completed, Dr. Dunning concluded that further surgery was advisable, and pursuant to his recommendation Mrs. Bernard underwent surgery on her right foot on June 14, 1966. The operation was performed by Dr. Dunning, and as we have already noted, a new trial was granted to take the deposition of the doctor.
In the deposition which was taken on August 29, 1966, Dr. Dunning testified that in the last mentioned operation he resected the enlargement over the first cuneiform and the navicular and he resected a portion of the base of the first metatarsal bone. In the same operation he planned to fuse the second and third metatarsal bones at the base, but when he exposed the joints he discovered that they had already fused so completely by nature that it was not necessary for him to do anything to them. He testified that there was no motion in these joints at all, and that the fusion could have occurred after he and Dr. Wickstrom had last examined Mrs. Bernard. He explained that the tendon which holds the arch of the foot up attaches at the point where this bone was removed, that the removal of the bone tends to make the tendon longer, and that this causes the foot to drop. In performing surgery in this last instance, therefore, he shortened the tendon and that had the effect of holding the foot in a straighter line. The wound healed without incident, and by the time the deposition was taken Mrs. Bernard had been gradually increasing her weight bearing on the foot, and she had been taking physical therapy for some stiffness in the ankle. The ankle, of course, had not been injured, and the stiffness which she experienced in it at that time was temporary and was due to the fact that it had been immobilized in a cast.
*735 Dr. Dunning examined plaintiff last on August 8, 1966. Up to that time she had not walked completely without support since the last surgical procedure, and the doctor estimated that three or four more weeks would be required before she would be able to resume the full use of her foot. He testified that he “took off a lot of bone,” that the operation substantially reduced the prominence that was on her right foot, and that he reshaped her foot as near normal as possible under her condition. He stated that this bony prominence or enlargement on her foot was the main source of her discomfort, that “with the bone being fused and the bump off she should have less discomfort,” and that “she’ll be able to wear a proper shoe and she will have a better gait, and with a shoe I’ll be able to line her foot up a little better with a wedge if necessary.” He also testified, “I believe she could wear a high heel shoe at times,” but that “for day-in and day-out she will have to have something with a support in it.”
After reviewing the testimony given by Dr. Dunning as to the results of the last operation, the trial judge observed:
“Dr. Dunning’s said deposition shows that the operation performed by him did reduce the prominence that was on plaintiff’s right foot. It will enable her to wear a proper shoe and enable the doctor to line her foot up a little better. She will be more comfortable and will be able to wear a high heel dress-up shoe at intervals.”
The trial judge concluded, however, that there had not been shown enough substantial improvement in Mrs. Bernard to warrant the setting aside of the judgment rendered on June 23, 1966.
Plaintiffs have cited no cases indicating what awards have been made in other cases for similar injuries. In support of their position that the award should be affirmed, they argue that each case must stand on its own, that awards made in other cases are of little assistance, and that the trial judge is given wide discretion in determining the amount which should be awarded in the general damages in a case.
We agree that each case must stand, more or less, on its own facts and circumstances, and that in the assessment of damages much discretion must be left to the trial judge. But we do not agree with plaintiffs’ argument that the awards made in other cases are of little assistance in determining whether the trial judge has abused the discretion which is vested in him in fixing an award of general damages. In the frequently cited case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), our Supreme Court said:
“In view of our codal provision, the appellate courts should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has-abused its discretion in fixing the award in the case under consideration.”
“It is true that atoarás made should not he all out of proportion with previous-awards made for somewhat similar injuries.” (Emphasis added.)
And in Ballard v. National Indemnity-Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964), the court, after quoting one of the above excerpts from the-Gaspard case, said:
“The amounts of awards in so-called' ‘similar’ cases are relevant only to determine whether there has been an abuse-of discretion, but for no other purpose— that is, to determine whether the award is so excessive or so inadequate as to bean abuse of discretion. In this connection it must always be remembered, as said in-Gaspard, that ‘ * * * cases relied upon may be similar in that each of them-involves a similar injury such as a broken arm, the loss of an eye or eyes, or the-loss of some member of the body.’ ”
We have been unable to find any case where an award of as much as $30,000.00 has been made for an injury such as that *736 which was sustained by Mrs. Bernard here. We find that the courts have consistently awarded less than that amount for injuries which are at least as serious and disabling as were those sustained by Mrs. Bernard.
Some of the cases which we have considered in determining whether the award made here is “all out of proportion to previous awards,” and thus whether the trial judge abused his discretion are: Pflieger v. Haws, 180 So.2d 892 (La.App. 1st Cir. 1964), where $5,000.00 was awarded for injuries which resulted in a 5 to 15 percent permanent disability of the foot; Davis v. McKey, 167 So.2d 416 (La.App. 4th Cir. 1964, Writ Refused), where an award of $15,000.00 was reduced to $10,000.00 for a 28 year old man who sustained a 35 percent disability of the left foot; Daigle v. Hardware Dealers Mutual Fire Insurance Company, 165 So.2d 643 (La.App. 1st Cir. 1964, Rehearing Denied), where an award of $15,000.00 was made to Mrs. Daigle for numerous injuries, including a disfiguring facial scar over her eye and the fracture of six bones in her leg and foot, the latter injury making it necessary for her to use special shoes, to walk with a limp and to be unable to stand without pain for any length of time; Christ v. State Through Department of Highways, 161 So.2d 322 (La.App. 3d Cir. 1964, Writ Refused), where we affirmed an award of $20,000 to the plaintiff who sustained multiple fractures and a crushing injury to his foot, resulting in a permanent 30 percent disability of the ankle and foot, permanently disabling him for prolonged weight bearing; and Abboud v. Hartford Accident and Indemnity Company, 157 So. 2d 338 (La.App. 3d Cir. 1963), where we affirmed an award of $12,500.00 to a 21 year old physical education student at the University of Southwestern Louisiana for an injury consisting primarily of a fracture dislocation of her left ankle, with the development of arthritis after reduction of the fracture by surgery. A fusion operation would be required later, and the injury prevented plaintiff from “engaging in any activities which would require strenuous movement of the ankle, such as running, jumping, dancing, etc.” Other cases which we have considered are: Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., 150 So.2d 309 (La.App. 2d Cir. 1963); Daire v. Southern Farm Bureau Casualty Ins. Co., 143 So.2d 389 (La.App. 3d Cir. 1962, Cert. Denied); Freeman v. Liberty Mutual Ins. Co., 175 So.2d 659 (La.App. 1st Cir. 1965); and Crane v. London, 152 So.2d 631 (La.App. 2d Cir. 1963).
In view of the award which was' made, it is apparent that the trial judge considered the injury to Mrs. Bernard’s foot to be of a permanent and disabling nature. Assuming that to be true, we nevertheless think the award made to her is out of proportion with awards made for somewhat similar injuries, and that it is excessive. We conclude that the award made by the trial court to Mrs. Bernard should be reduced to the sum of $15,000.00.
For the reasons herein assigned, therefore, the judgment appealed from is amended by reducing the award made to Mrs. Irene Segura, wife of Willy J. Bernard, Sr., from $30,000.00 to the sum of $15,000.00. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellees.
Amended and affirmed.