226 So.2d 573 (1969)
Ella Irene BOOKSH, wife of/and Paul L. WOMAX
v.
EARL GIBBON TRANSPORT, INC., Leroy Watson, Aetna Casualty & Surety Company, Michael E. Ponder, and National Surety Corporation.
No. 3589.
Court of Appeal of Louisiana, Fourth Circuit.
August 4, 1969.
Rehearing Denied October 9, 1969.
*574 Gross, Fincher & Abramson, Royce A. Fincher, Jr., Laplace, for plaintiffs-appellees.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, H. Martin Hunley, Jr., New Orleans, for Earl Gibbon Transport, Inc., Leroy Watson, and Aetna Casualty and Surety Co., defendants and third party plaintiffs-appellants.
Loeb, Dillon & Livaudais, Gerard M. Dillon, New Orleans, for Michael Ponder and National Surety Corp., defendants and third party defendants-appellees.
Before SAMUEL, REDMANN and BARNETTE, JJ.
REDMANN, Judge.
Plaintiffs are the parents of a 20 year old boy killed in a car-truck collision. Defendants are the car driver and his insurer, and the truck driver and his employer and insurer.
A jury verdict found the negligence of the truck driver proximately caused the accident and fixed plaintiffs' damages at $50,000 each; it found negligence on the car driver's part but found that negligence not a proximate cause. From judgment in accordance with the verdict the truck defendants appeal, seeking exoneration, or reduction in quantum and contribution from the car defendants (who were made third-party defendants).
Appellants also ask alternatively for a new trial on the ground they were prejudiced because the jury heard not only the testimony evoked by parties to the jury trial but also testimony evoked by parties to consolidated suits arising out of the same collision being tried to the judge. We reject this argument because appellants admit they cannot specify any item of such additional testimony as prejudicial and we found none in our review of the record.
The accident occurred between 12:30 and 1:00 a. m. in a heavy fog on a four lane highway.
Appellant truck driver testified his truck was moving north 10 to 20 mph when struck from the rear by the car in which plaintiffs' son was a passenger. But two disinterested witnesses, Barry Champion and Bruce Simon, say appellants' truck was stopped and a flashlight was being used some 5 to 15 yards behind the truck to direct traffic around it; and the collision debris was all situated where the truck and car remained. Appellants argue that collision while moving is shown by their truck's time-speed-distance-vibration recorder's failure to show a separate mark on its vibration scale [intended, according to the testimony, to show the vibration of motion over smooth highway). They argue that the collision must have occurred while ordinary motion was completely filling the vibration scale. However, the testimony does not satisfactorily explain the function of a vibration record as showing highway movement, when the speed recorder would serve that purpose. Nor does the testimony indicate the plane or planes of vibration being recorded, although it would seem vibration on a highway would be up and down, rather than forward and backward as one would expect from a rear-end collision. Furthermore, there is in fact a separate mark at 12:55 a. m. although *575 the truck was stopped since 12:40 (the recorder's time coincided with that of a highway weighing station where the truck had stopped a few minutes earlier). The expert witness said that this mark, only halfway across the scale, was probably caused by something as insignificant as slamming the truck door. This opinion is not very persuasive, in view of the absence of an explanation of the facts as to the recorder's function and operation upon which the opinion was based. One possible explanation for the driver having stopped so long is that there was a car which had gone off the highway at that point, and the driver may have stopped to render assistance in spite of his testimony such action would have violated company rules.
The clear preponderance of the evidence supports the conclusion that the appellants' truck was stopped on the highway at the time of the collision; that it had been so stopped for some time, since flashlight warnings were being given. Thus appellant driver was negligent per se in failing to stop on the adequate shoulder, and in failing to set out the required warning reflectors to the rear of the truck, LSA-R.S. 32:141 and 32:367. This negligence, especially under the condition of heavy fog, was a substantial factor in causing the accident which shortly resulted.
Of the two disinterested witnesses to the accident, Mr. Champion was driving a large van truck, and in response to the flashlight signal pulled into the left lane in order to pass appellants' stopped truck. Champion had experienced about four miles of lighter fog and patches prior to encountering heavy fog, which began about three fourths of a mile or a mile prior to the point of the accident. He had been slowing down and was going about 25 mph when he saw appellants' truck.
The other witness, Mr. Simon, had also experienced fog in patches, then found comparatively heavy fog beginning at the Boyce plant three fourths of a mile south of the accident. He found the fog thereafter getting denser and denser, and had reduced his speed, he estimated, to about 40 mph when he saw the flashlight signal. He began to move into the left lane and then noticed Champion's truck ahead, moving slower than himself, and Simon slowed down more to about 25 mph. Just at this point Simon observed another car passing him on his right, and Simon slowed even more in an effort to allow room for the other car to get into the left lane. At this time Champion's truck was beginning to pass appellants'. The other car continued on, moving somewhat to the left but striking with its right front the left rear corner of the stopped truck. The car's momentum raised its rear and threw it slightly to the left, and its left rear bumper corner described an arc upon the last 16 feet of the side of the passing van.
Plaintiff's son was a passenger in that other car, a station wagon driven by defendant-appellee Michael Ponder. Plaintiff's son was killed, apparently instantly.
Ponder's testimony was that he was perfectly alert, although he had a total of seven or eight beers during the evening and the five other boys in the car were all asleep within the few minutes since leaving the bachelor party they had attended in Reserve. He experienced patches of fog, and was driving 50 to 55 mph when he ran into heavy fog. He took his foot off the accelerator to reduce his speed. He had been in the heavy fog only a matter of seconds when the accident occurred. Ponder saw no flashlight signal, saw neither Simon's car nor Champion's van truck. When only about 30 feet away, he saw some kind of obstruction he could not describe except that it appeared to block both lanes of the highway. He remembers nothing from that point until he found himself walking back towards his car from the front of appellants' truck.
Ponder's estimation of the time he was in heavy fog conflicts with the distance estimates of Champion and Simon of three fourths of a mile, which would require 45 *576 seconds to traverse at 60 mph. We conclude Ponder was traveling through heavy fog for approximately 45 seconds without reasonably reducing his speed.
There is also an inconsistency in the estimated relative speeds of Simon and Ponder. Simon brought his car to a "normal" stop, leaving no skid marks, about two car lengths behind Ponder's car. Simon's speed must have been considerably less than that of Ponder, or Simon's lookout considerably more alert, to enable him to stop without difficulty while Ponder merely took his foot off the accelerator and crashed into the parked truck.
Because of Ponder's excessive speed and failure to maintain a proper lookout under the circumstances, we cannot escape agreement with the jury's finding he was guilty of negligence. His negligence was a substantial factor in bringing about the accident, and we know of no rule under which this negligence can escape classification as a proximate cause as we believe it clearly was.
Thus Ponder and his insurer (to policy limits) were solidarily liable with appellants, and appellants are entitled to judgment over against them on the third party demand, for contribution of one half.
The remaining question is quantum.
One serious difficulty with the jury's award of $50,000 to each parent is that it appears to be based exclusively on the parents' loss of love and companionship of their son (plus burial expense). There is no pain and suffering of the son, no medical expense etc. Nor is there any loss of support involved.
The exclusive order of preference of "beneficiaries" under LSA-C.C. art. 2315 may suggest wrongful death damages are more punitive than actual, since there is no reparation of actual damages of excluded beneficiaries, e. g. parents where the child is married. Nevertheless 2315's language is compensatory: those enabled to sue recover "the damages which they sustained through the wrongful death of the deceased."
The parents here would not have traded and could not have purchased the love and companionship of their apparently excellent and promising son for any amount of money. To place a price upon such a relationship degrades it, whether that price be $100,000, or $1,000,000, or more, or less. There is no price, there is no recompense, there is no measure in this kind of damage.
Nevertheless this was the jury's task. In assessing damages in quasi-of-fenses, "much discretion must be left to the judge or jury", LSA-C.C. art. 1934(3), whose assessment "should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the lower court." Lomenick v. Schoeffler, 250 La. 959, 200 So. 2d 127, 132 (1967).
Recognizing that no real measure of these damages exists, we are of the opinion that this is a case of clear abuse of the jury's discretion. There must be some reasonable relativity (even if not uniformity) among wrongful death awards to parents. The highest prior award we find in Louisiana is $15,000 to each, McConathy v. United Services Auto Ass'n, 188 So.2d 470 (La.App.1966); next highest is $12,500, see Miller v. Kinney, 213 So.2d 124 (La. App.1968); Fontenot v. Wood, 140 So.2d 34 (La.App.1962); Renz v. Texas & P. Ry. Co., 138 So.2d 114 (La.App. 1962); Palmer v. American Gen. Ins. Co., 126 So. 2d 777 (La.App.1961).
We conclude an award of $20,000 to each parent would do such substantial justice as may be done in a case like this. The father should recover the burial expenses, not questioned as to amount, of $1,619.20 and the judgment in his favor will be reduced only to $21,619.20.
Accordingly, the judgment appealed from is amended and affirmed in part and reversed and rendered in part, to grant *577 judgment in favor of plaintiffs Mr. and Mrs. Womax, in the amounts of $21,619.20 and $20,000.00 respectively, against defendants Earl Gibbon Transport, Inc., Leroy Watson, Aetna Casualty and Surety Company, Michael Elven Ponder, and National Surety Corporation, in solido, with interest and costs; and judgment for contribution of one half of principal, interest and costs, in favor of third-party plaintiffs Earl Gibbon Transport, Inc., Leroy Watson and Aetna Casualty and Surety Company against third-party defendants Michael Elven Ponder and National Surety Corporation; defendants Ponder and National to receive credit against the judgment in favor of Mr. Womax or contribution thereto for $500 funeral expense previously paid; and defendant National's principal liability to be limited by its policy's limit of $5,000.
Amended and affirmed in part; reversed and rendered in part.