MILLER, Judge.
Defendants appeal from the award of damages to plaintiff whose vehicle was rear-ended by the defendant Mercer’s truck. Defendants contend that the truck driver was confronted with a sudden emergency not of his own making and alternatively that the award is excessive. Plaintiff answered the appeal seeking an increase in the award. We affirm.
*587 At about 3:00 p. m. on the clear dry day of November 26, 1969, John N. Rachal, Sr.’s automobile was stalled and parked in the outside lane of the two westbound lanes at a point about one-third the way up the eastern approach to the Interstate 10 Calcasieu River Bridge. The two westbound lanes are separated from the two eastbound lanes by a concrete barrier. Traffic in both westbound lanes had slowed to allow traffic from both lanes to proceed around the disabled vehicle.
Plaintiff Carl Groom was driving in a westerly direction up the eastern bridge approach. He was in the right or outside lane, driving in second gear and was in the process of deciding whether the slow moving (Arceneaux) vehicle to his left would allow him to enter the left lane to proceed around the stalled vehicle. At that time he saw (in his outside rear view mirror) the overtaking defendant T. E. Mercer Trucking Company truck rapidly overtaking him. Seeing that he would be hit from the rear, Groom sped up at the same time Arce-neaux slowed or stopped, and Groom was almost in the passing lane when the front left fender of the truck struck the right rear end of Groom’s Ford. The impact occurred in the outside lane. The relatively light impact caused $345.97 in damages to Groom’s Ford.
Arceneaux verified Groom’s version of the accident and testified that he was moving at about the same or a slower speed than Groom and was slightly behind Groom. Arceneaux had been in the left lane for at least a mile or two before reaching the approach to the bridge.
Roy Crelia, the driver of the Mercer truck, had loaded about 27 joints of 7-inch casing oil field pipe early that morning. He departed Morgan City about 7 a. m. with another truck following him. They were delayed because of motor trouble (repaired by Crelia while on the road) and a stop for lunch near Lafayette. Crelia drank two beers at lunch. The other truck driver was no longer employed by Mercer, but Crelia knew where he was employed. Defendants did not call him to testify although according to Crelia, the second truck was only some 300 feet behind him as Crelia started up the bridge approach.
Crelia testified that he had been in the inside lane of Interstate 10 for a mile or so prior to this accident. He started up the bridge approach in the inside lane at 45 miles per hour. After the upgrade had slowed him to about 40 miles per hour and when he was 100 feet to the rear of the stalled vehicle, he first noticed the stalled vehicle. At the same rime an unidentified vehicle passed him on the right and cut in front of him making an emergency stop. Crelia then applied his brakes and entered the right lane to avoid striking the unidentified vehicle. After hitting the rear of Groom’s Ford, Crelia brought his truck to a stop without hitting the disabled vehicle.
It is defendants’ contention that Crelia could have avoided an accident except for the sudden emergency created by the unidentified motorist. Rachal’s testimony, although vague and “very confusing”, generally supported Crelia’s testimony that an unidentified motorist switched lanes immediately before the accident.
The trial judge considered the versions of Crelia and Rachal, but concluded that he “was more favorably impressed with the testimony of the plaintiff and Mr. Arce-neaux.” The trial judge noted that even if there was another car in the area, the accident resulted from inattention on the part of the truck driver. He failed to observe the stalled vehicle, and the slow moving vehicles in both lanes attempting to pass, until he was only 100 feet from the stalled vehicle. At that time he was driving his heavily loaded truck at 40 miles per hour. If he had not rear-ended plaintiff’s Ford, he would have rear-ended Arceneaux’s vehicle which was being properly operated in the inside lane.
The trial court’s conclusions are well supported by the evidence.
*588 The operator of the following vehicle must keep his vehicle under control. He must closely observe the forward vehicles and follow at a safe distance. If a rear-end collision occurs, he is presumed to be negligent. Barnes v. Toye Brothers Yellow Cab Company, 204 So.2d 83 (La.App. 4 Cir. 1967).
The trial court awarded $7,500 to this 61 year old plaintiff for his personal injuries. Plaintiff was employed by the Cities Service Refinery near Lake Charles as an A Operator. His duties were supervisory but required him to be quite active in checking the operation of the equipment in an area about one block in size.
Plaintiff sustained a moderate straining or spraining type injury to the cervical region superimposed upon a preexisting arthritic condition and marked narrowing of the interspaces between the 4th and 5th, 5th and 6th, and 6th and 7th cervical vertebral bodies. These suggested multiple degenerative discs.
Although plaintiff was not hospitalized and was not required to wear a neck support, he did use traction for 30 minutes each day over a three month period. This was discontinued when it did not give him relief from pain. For some months prior to trial, plaintiff’s only medication was aspirin and Anacin. Plaintiff was on vacation at the time of the accident and returned to his employment one week later. He did not make a claim for lost earnings.
Plaintiff’s family physician, a general practitioner, treated him on two or three occasions and referred him to Dr. Jerome W. Ambrister, an orthopedic surgeon. The family physician was not called to testify.
Dr. Ambrister examined plaintiff on January 3, 10, February 2, 22, April 2, May 21 and June 22, 1970. He prescribed traction and various pain medications and muscle relaxants. At seven months post injury, Dr. Ambrister concluded that plaintiff’s residual symptoms of pain were due to the hyperthrophic arthritis and the degenerative disc disease, and would exist indefinitely. He was of the opinion that if plaintiff’s history was correct, plaintiff’s arthritis was made symptomatic by the accident.
Dr. Norman P. Morin, orthopedic surgeon, examined plaintiff on March 26, 1971. He testified as a witness for defendants. It was his opinion that plaintiff had recovered from the accident with no residual orthopedic disability. He concluded that the injury could have rendered the arthritic condition in the neck symptomatic, but it had not aggravated the arthritic condition. He concluded that plaintiff’s pain for 10 to 15 months was related to the accident, but that thereafter his pain resulted solely from the arthritic changes which pre-existed the injury. Dr. Morin was of the opinion that Groom’s arthritis was so severe that he must have had some pain prior to the accident.
The positive and uncontradicted testimony of Groom, his wife, and two co-employees established that prior to the accident, plaintiff had no neck pain, but that since the accident, he has constant pain. Both orthopedic surgeons agreed that plaintiff was cooperative.
The trial court was well supported in the conclusion that: “The evidence reflects that Mr. Groom was a sincere hard working man prior to the accident and did not suffer any such symptoms prior thereto. However, it is clear that he is presently suffering from pain and stiffness in the cervical region and possibly other symptoms from which he will undoubtedly suffer for a considerable time.”
Defendants contend that the award is manifestly excessive and should be reduced to $5,000, while plaintiff contends that it is manifestly inadequate and should be increased to $10,000.
The trier of fact has great discretion in the award of general damages. LSA-C.C. Article 1934(3). This should not be disturbed on appellate review in *589 the absence of clear abuse and after taking into consideration that each personal injury may be evaluated according to its own peculiar facts and circumstances. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Richard v. American Oil Company, 213 So.2d 158 (La.App. 3 Cir. 1968).
We do not find the award manifestly excessive or inadequate.
The judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
Affirmed.