256 So.2d 700 (1972)
Omelia LaFitte Normand POSTON, Plaintiff-Appellee,
v.
FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY et al., Defendants-Appellants.
FIREMEN'S FUND INSURANCE COMPANY, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellants.
Nos. 11723, 11724.
Court of Appeal of Louisiana, Second Circuit.
January 4, 1972.
Rehearing Denied February 1, 1972.
Writs Refused March 3, 1972.
*702 Mayer & Smith, by Alex F. Smith, Jr., Shreveport, for Firemen's Ins. Co..
Lunn, Iron, Switzer, Johnson & Salley, by Harry A. Johnson, Jr., Shreveport, for State Farm Mut. Automobile Ins. Co.
Miller & De Laune, by Donald R. Miller, Shreveport, for Omelia LaFitte Normand Poston.
Before AYRES, HEARD and HALL, JJ.
En Banc. Rehearing Denied February 1, 1972.
HEARD, Judge.
These consolidated suits arose out of a collision between a 1969 Buick driven by Jerry Ray Neel, a minor, and a 1967 three-quarter ton Ford truck driven by Leon T. Bozeman for the City Board of Health of Shreveport and the Caddo Parish Health Unit. As a result of this collision a guest passenger in the Buick and Leon T. Bozeman were killed. The guest passenger's mother, Omelia LaFitte Normand Poston, filed a wrongful death action against the liability insurer of Jerry Ray Neel, the City Board of Health of Shreveport, the Caddo Parish Health Unit and the liability insurer of these two agencies. Subsequently Mrs. Poston caused the suit against the City Board of Health and the Caddo Parish Health Unit to be dismissed.
Jerry Ray Neel's liability insurer is State Farm Mutual Automobile Insurance Company. The City Board of Health and the Caddo Parish Health Unit are insured by Firemen's Insurance Company of Newark, New Jersey.
State Farm filed a third party petition against Firemen's for damages to the Buick and Firemen's filed suit against State Farm and John W. Neel, Jerry Ray Neel's father, to recover workmen's compensation benefits paid to Bozeman's widow. State Farm and Firemen's stipulated that if they were held liable in solido in the suit by Mrs. Poston, then Firemen's would not recover from State Farm on its workmen's compensation benefits suit, and State Farm would not recover on its third party demand. The suit filed by Mrs. Poston against State Farm and Firemen's was tried before a jury which returned a verdict for Mrs. Poston against both insurers, in solido, in the amount of $35,000. Judgment was rendered accordingly. Pursuant to the stipulation, judgment was rendered for State Farm against Firemen's on the compensation benefits claim and judgment was rendered for Firemen's against State Farm on the third party demand. Both State Farm and Firemen's perfected appeals, and Mrs. Poston answered the appeals.
It was established by the evidence that Jerry Ray Neel was proceeding easterly on the Flournoy-Lucas Road in Shreveport about midnight on June 17, 1970. His rate of speed at the time of the accident is in dispute. Leon T. Bozeman was also proceeding easterly on Flournoy-Lucas Road. His speed was approximately ten to fifteen miles per hour. Bozeman was driving a truck which was emitting a fog designed to kill insects. Neel's car struck the rear of the truck and the truck overturned and caught fire. Bozeman and John Lee Normand III, a guest passenger in Neel's car were killed. State Farm and Mrs. Poston assert that the Caddo Parish Health Unit and the City Board of Health were negligent because of the inadequate lighting on the truck. Firemen's and Mrs. Poston assert that Neel was negligent because of his excessive speed and failure to stop. Both insurers assert that the other insured's negligence was the sole proximate cause of the accident.
Jerald N. Williams, a witness, stated that he observed the fogging truck shortly before the collision. He was riding a motorcycle and observed a blanket of fog across the road. Upon entering the fog he recognized it as insecticide. At that time because of the insecticide he was unable to see the truck at all. He moved into the passing lane and overtook the truck, seeing it for the first time as he left the fog. He stated that when he left the fog he could *703 see an amber rotating beacon on top of the truck.
Perry M. Petteway also observed the fogging truck prior to the accident. The truck approached Petteway's car and then he was engulfed in the fog causing him to run off the road. He stated that he looked back through his rear view mirror and was unable to see the truck because of the fog.
Clifford Ernest Leonard approached the truck immediately prior to the collision. After being engulfed in the fog he looked back and could see no lights on the truck. He then saw the Buick approaching the truck and heard the impact of the collision.
Jerry Ray Neel, the driver of the Buick, testified that he could see no lights on the truck. When he finally saw the truck the collision was imminent, and he stated that he had time only to turn his car to the left.
The testimony of these four witnesses indicates clearly that the truck was inadequately lighted. A person approaching the truck from the rear could simply not see the truck until being relatively close to its rear end. The fog obstructed the view of the drivers on the road and this imposed a duty on the City Board of Health and Caddo Parish Health Unit to either make the truck visible through the fog or warn drivers that it was not visible. Neither of these precautions were taken by these agencies, and therefore breached their duty of reasonable care. We agree with the jury's findings of negligence on the part of the City Board of Health and the Caddo Parish Health Unit.
We also agree that Jerry Ray Neel was negligent. He testified that he was driving 45 or 50 miles per hour when he observed the fog ahead. He removed his foot from the accelerator and coasted into the fog. Suddenly the right front of his car struck the left rear of the truck.
Charles James McComb testified that the accident occurred in front of his home; that at the time he was sitting on his front porch and observed Neel's vehicle seconds before the collision. He heard tires squealing as the car rounded a curve to the west and then he heard the sound of the car easing off from acceleration. The Buick flashed in front of his residence and struck the truck. McComb estimated the speed of the Buick as "well in excess of 60 miles an hour."
Clifford E. Leonard saw the Buick approaching the rear of the truck and estimated the speed of the Buick at 65 or 70 miles per hour. The speed limit on Flournoy-Lucas Road at the time of the accident was 35 miles per hour. The testimony shows that Neel was driving considerably in excess of this posted speed limit. Neel was confronted with thick fog and rather than applying his brakes he simply removed his foot from the accelerator. He continued to coast until striking the truck. This is not consistent with due care. Neel breached his duty of due care and was negligent in operating his vehicle at an excessive rate of speed under the circumstances.
In the case of Wilson v. Scurlock Oil Company, La.App., 126 So.2d 429 (2d Cir. 1960) we stated:
"There may be more than one proximate cause of an accident or injury and, where each of the concurrent efficient causes contributes directly to the accident or injury, each of said acts constitutes a proximate cause thereof. Thus, as a general rule, negligence, in order to render a person liable, need not be the sole cause of an accident or injury. It is sufficient that negligence concurring with one or more other efficient causes combine to produce the damage or injury. Concurrent causes are causes acting together to produce an injury which would not have resulted in the absence of either ..." [126 So.2d 429, 436]
Here the negligence of the two insureds concurred to injure Mrs. Poston and we agree with the jury that State *704 Farm and Firemen's should be held liable in solido for the damage.
State Farm and Firemen's assert that the award of $35,000 to Mrs. Poston is excessive. The Louisiana Constitution requires that appellate courts review damage awards. LSA-Const. Art. 7, § 29. However, "[i]n the assessment of damages... in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury..." LSA-C.C. Art. 1934(3). Thus, the inquiry of the appellate court is limited to whether the trial court has abused its "much discretion" in making a certain award. A consideration of awards in similar cases is relevant to determine whether a trial court has abused its discretion in making a certain award. Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1946); Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963); Linthicum v. Hill, La.App., 185 So.2d 866 (3d Cir. 1966); Bernard v. Castille, 197 So.2d 731, La.App., (3d Cir. 1967), writ refused 250 La. 894, 199 So.2d 914 (1967); Hall v. New Orleans Public Service, Inc., La.App., 209 So.2d 168 (4th Cir. 1968); Gouta v. Madison, La.App., 238 So.2d 799 (1st Cir. 1970). Although similar cases are relevant in a consideration of abuse of discretion in making an award, our Supreme Court has stated that "... entirely too much emphasis has been given to the goal of uniformity of awards for similar injuries, the appellate courts' role in maintaining this uniformity has been extended too far, and adjudicated cases have been given too much weight in the appellate courts' determination of the adequacy or inadequacy of awards." Gaspard v. LeMaire, supra, 158 So.2d at p. 158. The Supreme Court states later, "... each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration." Ballard v. National Indemnity Company of Omaha, Nebraska, supra, 169 So.2d at p. 67. See also Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
In summary then, it is our duty to review this award of $35,000 to see if the trial court abused its "much discretion". In deciding whether the trial court abused its "much discretion", we will consider awards in similar cases, but pay more attention to the particular facts peculiar to the case at hand. We will not seek uniformity so much as we will seek to compensate Mrs. Poston for her injuries.
First, we will consider awards made in similar cases. In Tatum v. Parish of East Baton Rouge, La.App., 244 So.2d 913 (1st Cir. 1971), each parent was awarded $15,000 for the wrongful death of their seven year old son. In Mogabgab v. Orleans Parish School Board, La.App., 239 So.2d 456 (4th Cir. 1970), each parent was awarded $20,000 for the wrongful death of their mature, well rounded and intellectually superior sixteen year old son. In Sylvester v. Liberty Mutual Insurance Company, La.App., 237 So.2d 431 (3d Cir. 1970), writ refused, 258 La. 579, 247 So.2d 395 (1971), each parent was awarded $20,000 for the wrongful death of each of their eleven and twelve year old children. It is noted that Justices Barham and Summers were of the opinion the writ should have been granted in Sylvester because the "... Court of Appeal gives only lip service to Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 [1967]; Gaspard v. LeMaire [supra]; Ballard v. National Indemnity Co. [supra]."). In Orgeron v. Earl Gibbon Transport, Inc., La.App., 235 So.2d 134 (4th Cir. 1970), each parent was awarded $20,000 for the wrongful death of their college age son. In Womax v. Earl Gibbon Transport, Inc., La.App., 226 So.2d 573 (4th Cir. 1969), each parent was awarded $20,000 for the wrongful death of their twenty year old son. In McConathy v. United Services Automobile Association, La.App., 188 So.2d 470 (3d Cir. 1966), each parent was awarded $15,000 for the wrongful death of their thirteen year old *705 son. In McDaniel v. Welsh, La.App., 234 So.2d 833 (1st Cir. 1970), a father was awarded $12,500 for the wrongful death of his twenty-two year old daughter who did not live with him, but visited him practically every weekend. In Miller v. Kinney, La.App., 213 So.2d 124 (3d Cir. 1968), each parent was awarded $12,500 for the wrongful death of their twenty year old son who lived with them.
From these similar cases, it can be readily seen that the most awarded in Louisiana to any one parent for the wrongful death of a child is $20,000. This is relevant to the question of whether the trial court abused its discretion in awarding $35,000 to Mrs. Poston. It is not, however, in itself, dispositive of the question.
The evidence in the instant case overwhelmingly establishes that John Lee Normand III was an industrious nineteen year old man with a bright future. He lived with his divorced mother, and they worked for the same employer. He had an unusually close relationship with his mother, taking her hunting and fishing with him regularly. It barely requires mentioning that no amount of money can compensate Mrs. Poston for the loss of her son and only companion in the home. Nevertheless, our courts must assess in money that which cannot be assessed. The particular facts of this case indicate that an award of $35,000 is not an abuse of the trial court's "much discretion." To simply award Mrs. Poston $20,000 because that is the maximum awarded so far would be to ignore the mandates of our Civil Code and Supreme Court. LSA-Civil Code Art. 1934(3); Gaspard v. LeMaire, supra; Lomenick v. Schoeffler, supra; Miller v. Thomas, supra.
Thus, in light of the "much discretion" vested in the trial court in awarding damages, the awards in similar cases, and the particular facts of the instant case, we hold that the award of $35,000 to Mrs. Poston for the wrongful death of her nineteen year old son is neither inadequate nor excessive.
Finding no manifest error in the judgment appealed from, it is affirmed with costs to be borne one-half by State Farm Mutual Automobile Insurance Company and the remaining one-half by Firemen's Insurance Company of Newark, New Jersey.