279 So.2d 255 (1973)
James Vance BAILES et al., Plaintiffs-Appellants,
v.
CASUALTY RECIPROCAL EXCHANGE et al., Defendants-Appellees.
No. 12084.
Court of Appeal of Louisiana, Second Circuit.
May 30, 1973.
Rehearing Denied June 25, 1973.
Writ Refused August 29, 1973.
*257 Burnett, Harrison & Sutton by Bobby D. Sutton, Shreveport, for plaintiffs-appellants.
Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Shreveport, for defendants-appellees.
Before AYRES, HEARD and HALL, JJ.
En Banc. Rehearing Denied June 25, 1973.
HEARD, Judge.
This wrongful death action was brought individually by the parents of 15 year old Steve Bailes, with James V. Bailes also suing as administrator of his deceased son's estate. Young Bailes was critically injured June 19, 1971, when the 1970 Honda motorcycle he was driving collided with a 1971 Ford LTD attempting a left turn. He died three days later.
Defendants are Wilbert J. Maxey, individually and as administrator of the estate of his then 17 year old daughter, Bernadette, driver of the car, and his liability insurer, Casualty Reciprocal Exchange. They denied liability and pled contributory negligence.
The accident occurred on the above date about 4:00 P.M. when the weather was clear; it was daylight, and the road surface was dry concrete. Miss Maxey was attempting a left turn from the inside westbound lane of Lakeshore Drive into the private driveway of the residence of Herschel Cobb. The western edge of the driveway is 103.2 feet east of the center of the intersection of Lakeshore Drive, Lakeshore Drive Extension, which continues to the west, Curtis Lane, intersecting from the south, and South Lakeshore Drive, intersecting from the north. This intersection is controlled by several traffic lights, and the measurements used were made from a point directly under the center lights of the intersection. Lakeshore Drive Extension drops off in a sharp decline approximately 100 to 120 feet west of the intersection. Immediately in front of the driveway are the two eastbound lanes of Lakeshore Drive having a combined width of 20 feet 9½ inches. There is then an opening of 48 feet 6 inches between two concrete medians to the east and west of the opening. Next are the three westbound lanes of Lakeshore Drive with the southernmost lane used for left turning vehicles at the above intersection.
The trial judge rendered judgment in favor of defendants, rejecting plaintiffs' demands. It was the court's opinion that Miss Maxey started the forward movement of her vehicle to cross Lakeshore Drive at a time when the motorcycle had not yet come into view; had she observed it after she reached a point near the center line, and at which point the court concluded the motorcycle was in the approximate area of the intersection, she would not have been able to avoid the accident because, in the time necessary to apply her brakes and bring her car to a stop, it would have resulted in her blocking both lanes of traffic. It further found Steve Bailes negligent in failing to observe her vehicle in motion and in failing to take any type of evasive action to attempt to avoid the collision as he had adequate distance and time within which to do so, according to a chart the judge used. We reverse this judgment.
Miss Maxey testified she pulled into the left turn or southernmost westbound lane, stopped and saw no oncoming or eastbound traffic. She looked to see if Herschel Cobb, Jr.'s car was in the carport, and seeing it there, she began her turn. After beginning the turn she then saw Herschel *258 Cobb, Jr. standing in his front door. As the front of her car reached the edge of the driveway, she stated she glanced to her right and saw the helmet of a motorcycle rider just topping the hill. She then accelerated trying to get out of the way, but the motorcycle collided with the car at its right rear door. The point of impact was very near the center line of Lakeshore's two eastbound lanes according to the investigating officers and other witnesses.
Three other eyewitnesses, however, placed the motorcycle much closer to the point of impact. B. L. Wooley and Glenn Farrar, who were facing south waiting for a red light on South Lakeshore Drive, saw the motorcycle approach the intersection from the west and followed it through the intersection. Wooley stated he saw the Maxey vehicle in motion with its front not yet to the center line when the motorcycle was just past the eastern edge of the intersection. Farrar placed the vehicles closer together. He testified he first saw the car in motion when its front wheels were about at the center line and the motorcycle was a little less than halfway between the intersection and the driveway. Herschel Cobb, Jr. was standing on his porch and could see to the center of the intersection right under the lights. He saw the motorcycle directly under these lights when the front of the Maxey vehicle was at the center line. From this testimony, the trial judge reached the above findings and concluded that Miss Maxey was not negligent. We cannot agree with this conclusion.
The trial court's finding that Miss Maxey commenced her left turn before the motorcycle came into view is manifestly erroneous. Miss Maxey had an unobstructed view of some 103 feet from the driveway to the intersection and 100-120 feet beyond the intersection. The photographs entered in evidence clearly indicate a motorist in Miss Maxey's position could have seen vehicles approaching from the west before they reached the crest of the hill.
Miss Maxey testified the light facing her was yellow as she began her turn. James H. Downs of the Traffic Engineering Department, answered a hypothetical question that the light should have been green for eastbound traffic if the light changed to green for southbound traffic five seconds after an eastbound vehicle went through the intersection. Bailes, therefore, was at least entering the intersection at the time she saw the light and began her turn.
While she may not have seen him when she began her turn, it is obvious from the testimony that he was in view as she reached the center line. The motorcycle was somewhere between the center of the intersection and halfway to the driveway as she reached that point.
The duty of a left-turning motorist is stated in LSA-R.S. 32:104 thus:
"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."
This duty has been discussed in numerous cases. A motorist who attempts a left turn or who attempts to turn from a direct line on public highways of the state must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic and must yield the right of way to such traffic. Levron v. Brien, 246 So.2d 366 (La.App., 1st Cir. 1971), Dupre v. Olympic Insurance Company, 232 So.2d 544 (La.App., 3d Cir. 1970). We find from the above evidence, under the jurisprudence, that Miss Maxey breached this duty in two instances. She did not maintain a proper lookout before and at the time she executed her left turn because she then would have seen the motorcycle which she could and should have seen, nor did she yield the right of way to *259 the motorcycle when it was visible to her as she reached the center line of the eastbound lanes. A further duty of anticipating vehicles coming over the hill through the intersection may be imposed as she was familiar with it and knew it was dangerous.
We further find Steve Bailes was not guilty of any negligence. There is no finding by the lower court that Bailes was exceeding the posted speed limit of 35 miles per hour. The evidence is clear that he was riding the motorcycle in a normal and prudent manner. As the trial judge pointed out in his opinion, Bailes was naturally more preoccupied with his primary duty of observing the vehicles in the immediate intersection as he came over the hill and entered it. One coming through this intersection would not be anticipating a left turning driver some 100 feet further turning into a driveway. Since Bailes was lawfully proceeding in his lane of traffic, he had the right to assume that Miss Maxey would obey the law and allow him to continue. At the point where he saw or should have seen that she was not going to comply, Bailes did not have the time or distance to stop or avoid the collision even had he tried to do so. This lack of time was confirmed by Wooley's testimony. Bailes' actions were not negligent.
The trial judge committed further error by considering a stopping distance chart not properly admitted into evidence (Smith v. Brekeen, 216 So.2d 90 [La.App., 1st Cir. 1968]) and which applied to automobiles and not motorcycles.
Having found Miss Maxey's negligence the sole proximate cause of the accident and Steve Bailes free of negligence, we turn to the question of quantum. Contrary to defendant's contention, the evidence does establish some conscious pain and suffering by young Bailes. He was conscious a short time after the accident and complained that his head was hurting. This was the result of the massive cerebral hemorrhage he suffered which later rendered him unconscious. We feel that an award of $1,000 for pain and suffering is appropriate.
Plaintiffs further ask for $30,000 for each parent in damages. While no amount of money can compensate Mr. and Mrs. Bailes for the loss of their son, this court must assess in money that which cannot be assessed. We reviewed such awards in Poston v. Firemen's Insurance Company of Newark, New Jersey, 256 So. 2d 700 (La.App., 2d Cir. 1972) and affirmed an award of $35,000 to a divorced mother for the death of her only son, although the highest prior award had been only $20,000. The evidence establishes while Steve was an industrious, conscientious young man who had a close relationship with his family, he was one of four sons, and for that reason their loss is not as great as the loss of an only child. Thus we believe an award of $25,000 for each parent is adequate.
We further find the following special damages were proved and recoverable:

Willis Knighton Hospital $ 680.75
Osborn Funeral Home 1,127.13
Dr. Smith 45.00
Ambulance 35.00
 _________
Total $1,887.88

The total amount awarded is $52,887.88. It is noted this amount exceeds the policy limits insured by Casualty Reciprocal Exchange and its liability for bodily injury, and liability is therefore restricted to its $10,000 policy limits, plus all costs, together with legal interest upon the entire amount of the judgment until paid. Fish v. Martin, 201 So.2d 341 (La.App., 3d Cir. 1967).
Therefore, the judgment of the lower court is reversed and set aside, and it is ordered, adjudged and decreed that there be judgment in favor of plaintiff, James Vance Bailes, individually and as administrator of the estate of his minor son, and against defendants, Wilbert J. Maxey and *260 Casualty Reciprocal Exchange, jointly, severally and in solido in the sum of $27,887.88, together with legal interest thereon from date of judicial demand until paid, and
It is further ordered, adjudged and decreed there be judgment in favor of plaintiff, Betty Bailes, in her individual capacity and against defendants, Wilbert J. Maxey and Casualty Reciprocal Exchange jointly, severally and in solido in the sum of $25,000, together with legal interest thereon from date of judicial demand until paid; and
It is further ordered, adjudged and decreed that the judgment against Casualty Reciprocal Exchange is restricted to the sum of $10,000, plus interest and all cost.