304 So.2d 396 (1974)
Gustavo A. RODRIGUEZ, Individually, as Dative Tutor of Orlando G. Rodriguez, and as Administrator of the Successions of Eduardo F. Rodriguez, et al.
v.
Albert R. TREBITZ et al.
No. 9687.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 28, 1974.
*397 Walker P. Macmurdo, Baton Rouge, for plaintiff-appellants.
Carlos G. Spaht, Baton Rouge, John P. Everett, Jr., Baton Rouge, for plaintiffs-appellees-appellants.
Daniel R. Atkinson, Baton Rouge, for defendant-appellee-appellant.
Before: LOTTINGER, BLANCHE and CRAIN, JJ.
CRAIN, Judge.
The matter before us arises from an automobile accident which occurred on February 22, 1971, at approximately 7:30 p. m. involving vehicles driven by Dr. Eduardo F. Rodriguez and Albert Trebitz. In the accident Dr. Rodriguez's wife, Martha B. Rodriguez was killed immediately and Dr. Eduardo Rodriguez succumbed from injuries sustained in the accident several weeks therafter. This suit is brought by Gustavo A. Rodriguez, a major son of Dr. and Mrs. Rodriguez, both individually, as dative tutor of Orlando G. Rodriguez, a minor son of Dr. and Mrs. Rodriguez, and administrator of the successions of Dr. and Mrs. Rodriguez, and also by Eduardo Rodriguez, Jr., the other major son of the Rodriguezs' against Albert R. Trebitz, Arthur Dooley and Son of Louisiana, Inc., Trebitz's employer, and Royal Indemnity Company, the liability insurer of Arthur Dooley and Son of Louisiana, Inc. for the wrongful death and personal injuries of Dr. and Mrs. Rodriguez. The defendants answered the plaintiff's suit and also filed a third party demand against Gustavo A. Rodriguez as administrator of the succession of Eduardo F. Rodriguez, and the liability insurer of Eduardo F. Rodriguez, Allstate Insurance Company for indemnity and contribution in the event of any liability on part of the defendants. The matter was tried before a jury and a verdict was *398 rendered holding Albert Trebitz and Dr. Rodriguez both guilty of negligence proximately causing the accident and the resulting injuries, and awarding the plaintiffs damages for the wrongful death of their mother, Martha B. Rodriguez. Judgment was also granted in favor of third party plaintiffs against the succession of Eduardo Rodriguez and its insurer, Allstate, for one-half of the amount awarded plaintiffs as contribution. From that decision this appeal has been taken by plaintiffs and defendants.
Plaintiff-appellants contend that the accident was proximately caused by the negligence of Trebitz and that Dr. Rodriguez was not guilty of any negligence whatsoever. They argue further that for this reason they are entitled to recover for the wrongful death of Dr. Rodriguez and for damages for his pain and suffering from injuries sustained in the accident during the twenty-one days he lived subsequent thereto.
Defendant-appellant Trebitz contends that he was not guilty of any negligence proximately causing the accident and therefore should not be cast in judgment.
Third party defendant-appellants contend that Dr. Rodriguez was not guilty of any negligence proximately causing the accident and therefore they should not be cast in judgment and compelled to contribute in accord with the third party demand against them.
The accident in question happened on U.S. Highway 61, a four-lane highway approximately one quarter of a mile from the intersection of Louisiana Highway 22 and U.S. Highway 61 within the limits of the town of Sorrento, Louisiana. Trebitz testified that he was proceeding northerly in the inside lane of traffic on U.S. Highway 61 and that as he approached the traffic light in the town of Sorrento he began to slow his vehicle down since the light was red. He stated that as he approached the light there was a line of traffic stopped at the light in the outer lane of U.S. Highway 61. He slowed his speed to approximately 40 miles an hour when the light changed to green, and he proceeded on through the intersection. He was in the course of passing the line of traffic moving in the right hand lane when the accident occurred.
Trebitz testified that he was alongside a large sized tractor-trailer rig on a dimly lighted section of the highway approximately sixteen hundred feet past the aforementioned intersection when suddenly Dr. Rodriguez, in his 1969 Ford automobile, darted into his lane of traffic from in front of the tractor-trailer truck. Trebitz was allegedly driving around fifty miles an hour at that point and the traffic in the congested lane was proceeding at approximately 30 miles per hour. He further testified that Dr. Rodriguez's car had no tail-lights burning and he did not observe the vehicle until he saw light reflected from its roof. By that time he was unable to stop and avoid a collision with the rear end of Dr. Rodriguez's vehicle. He related that he collided with the rear end of Dr. Rodriguez's vehicle and that vehicle lurched forward and crashed into a utility pole on the east side of the highway approximately 400 feet from the original point of impact.
Dr. Rodriguez's deposition was not taken prior to his death and certain testimony by others regarding his statements prior to his death were excluded as hearsay by the trial court. There were no other eyewitnesses to the accident produced at the trial.
In an effort to prove how the accident occurred, the plaintiffs called two accident reconstruction experts, Dr. Leonard Cardwell Adams, head of the electrical engineering department at Louisiana State University and Dr. Owen K. Dart, an expert automobile accident consultant. Dr. Adams testified primarily regarding his opinion that at the time of the impact between the Trebitzs' car and the Rodriguezs' car, the tail-lights on the Rodriguez *399 car were burning contrary to the testimony given by Trebitz. Even though he agrees that at the time the bulb was broken, the filaments inside were cold since they did not burn up, he contends that the filaments were so distorted they must have been hot when first impacted. He thus concludes that the breaking of the bulb must have occurred after the filaments were distorted by the first impact, probably on collision of the vehicle with the utility pole.
Dr. Dart's testimony consisted of his opinion that Trebitz could have avoided the collision if he would have taken reasonable steps to do so. He based his findings on the period of time taken for one vehicle to change lanes of traffic and the relative speed of the vehicles and the distance between the vehicles when the maneuver was undertaken as determined by the testimony of Trebitz and other physical evidence at the scene of the accident.
To contradict this expert testimony, defendant-appellants countered with two experts of their own, Alvin Doyle and William H. Tonn, Jr., both of whom were recognized as experts in automobile accident reconstruction. These experts contradicted the conclusions reached by plaintiff's experts regarding the tail-lights and also the avoidability of the collision after the lane change by Rodriguez.
The investigating officers testified regarding physical evidence they found at the scene of the accident. They stated that there were 18 feet of skid marks left by the Trebitz vehicle, but were unable to determine whether these skid marks were left prior to or after the collision.
The jury after considering all the evidence including the elaborate theories of the experts who testified, determined that Trebitz and Rodriguez were both negligent in causing the accident and that the negligence of both proximately caused the accident.
The plaintiff-appellants first contend that since their only eyewitness to the accident, Dr. Rodriguez, passed away soon after the accident, they should be able to introduce into evidence certain statements made by him to others regarding the manner in which the accident occurred. This evidence was excluded as hearsay by the trial court. We hold that the trial court was correct. The jurisprudential rule is well settled that hearsay statements by a deceased person are not admissible unless they are part of the res gestae, and consequently an exception to the hearsay rule. Micheli v. Toye Brothers Yellow Cab Company, 174 So.2d 168 (La.App. 4th Cir. 1965). The statements offered in this case were made well after the accident occurred and we find no grounds to admit the statements into evidence as "res gestae".
The other assertion made by the appellants is that Dr. Rodriguez's statement should be admitted as containing independently relevant facts not constituting hearsay. This argument is not convincing. The sole relevancy of the statements derives from the truthfulness of their contents, and not the mere fact of their utterance. Therefore the statement is hearsay and inadmissible unless falling under an exception to the hearsay rule which it does not. The trial court was therefore correct in refusing to admit the statement in evidence.
We now address ourselves to the primary issue in the case, that is, whether as a factual matter the jury's verdict holding both motorists negligent should be overruled. Counsel for defendant-appellants and for third-party defendant-appellants vigorously contend that the jury's finding is illogical and inconsistent and that one or the other drivers must be held to be solely responsible.
We note that the general law regarding the respective duties of the drivers is relatively clear. The driver changing lanes must take all reasonable steps to ascertain that the maneuver can be performed safely without endangering traffic *400 in the other lane. See LSA-R.S. 32:79; Anthony v. State Farm Mutual Ins. Co., 227 So.2d 180 (La.App.1969); Jefferson v. Strickland, 242 So.2d 582 (La.App. 1st Cir. 1970).
It is equally well settled that a motorist colliding with another from the rear must show unusual circumstances to exculpate himself from a presumption of negligence. Groom v. T. E. Mercer Trucking Co., 253 So.2d 586 (La.App.); Calvert Fire Ins. Co. v. Barlow, 215 So.2d 392 (La.App.).
With these two rules in mind, we must consider the jury's verdict. Since we have no way of knowing the reasons for the jury's findings, we must determine whether there is any factual basis for these findings. If there is we should affirm. Canter v. Koehring, 283 So.2d 716 (S.Ct. 1973).
We find the jury had sufficient basis for its finding of fact that Trebitz was negligent and that his negligence was a proximate cause of the accident. Considering the testimony of Trebitz himself, the experts called by both sides, and the officer investigating the accident, there is factual basis for a determination that Trebitz failed to maintain a reasonable lookout for traffic either ahead of him or changing lanes ahead of him. The physical evidence indicates that he struck the Rodriguezs' vehicle from the rear after which that vehicle traveled some 400 feet in a northeasterly direction before colliding with a utility pole. The jury could well find from these facts that the Rodriguez vehicle had completed its change of lane prior to impact and was already in the Trebitz lane. Otherwise it could reasonably be concluded that the Rodriguez vehicle would have been struck while at an angle, which, if in the process of a change of lane, would have sent the vehicle after impact in the opposite direction from that which it actually took.
We next must consider the question of Dr. Rodriguez's negligence. We find a sufficient factual basis to support the juries' finding of negligence on his part in failing to maintain operable tail-lights on his automobile. Since Trebitz was the only eyewitness produced by either party, the jury certainly would give his testimony much weight. Also the jury was in a better position than this court to observe the expert witnesses and could reasonably have believed the defendant's expert who testified that Rodriguez's tail-lights were not burning at the time of the initial collision.
Consequently the court affirms the jury's findings of negligence.
The plaintiffs sued for loss of future support, and love and affection caused by the death of their mother. In addition, plaintiffs sued for special damages caused by their mother's death, including burial expenses, ambulance services, etc., which were stipulated to be $1,683.10. The jury returned a verdict awarding to the minor Orlando G. Rodriguez $60,000.00 and to Gustavo and Eduardo Rodriguez $35,000.00 each.
The evidence reveals that Mrs. Rodriguez was 45 years of age and that as a mother she was close to her sons. The record further reveals that Gustavo Rodriguez was 23 years of age and was about to enter medical school when the accident occurred. Orlando Rodriguez was the youngest and was 12 at the time of the trial. Eduardo Rodriguez was 22 years of age at the time of the trial and was employed in the quality control laboratory at Woodland Chemicals.
The trial court and jury have much discretion in fixing a damage award and prior awards are merely an indication of value which are not necessarily binding. Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963), Luttrell v. State Farm Mutual Automobile Ins. Co., 244 So.2d 97 (La.App. 3rd Cir., 1971). However, the award here is greatly out of line with all *401 existing jurisprudence. Winzer v. Lewis, 251 So.2d 650 (La.App.1971); writ refused, 259 La. 934, 253 So.2d 379. Deville v. State Farm Mutual Automobile Insurance Co., 227 So.2d 642 (La.App.1969). LeBlanc v. Blanchard's Estate, 266 So.2d 918 (La.App.1972) writ refused 263 La. 618, 268 So.2d 677.
There was no testimony in the record to substantiate the claims of the plaintiffs for loss of support from their mother. We therefore must assume that the awards reflected in the jury's verdict were for loss of love and affection. For loss of love and affection we feel that the award granted to Orlando Rodriguez should be reduced to $35,000.00 and the awards to Eduardo and Gustavo Rodriguez should be reduced to $20,000.00 each. We are aware that even these awards greatly exceed awards made in similar cases which we have cited above. However, in this incident both parents were killed and under these circumstances the loss of the mother was surely felt more acutely. Wright et al. v. Romano et al., 279 So.2d 735 (La. App. 1st Cir., 1973).
Additionally, we find awards to parents for loss of love and affection for the death of their children to be considerably higher than awards to children for the death of their parents, c. f. Poston v. Firemen's Insurance Co. of Newark, N. J., 256 So.2d 700 (La.App. 2d Cir., 1972), Bailes v. Casualty Reciprocal Exchange, 279 So.2d 255 (La.App. 2d Cir., 1973). We are unable to justify such a large discrepancy especially where an unmarried minor child is involved who has lost both parents.
For the reasons given the verdict of the jury is affirmed as amended.
Amended and affirmed.
BLANCHE, J., dissents and hands down written reasons.
BLANCHE, Judge (dissenting).
A review of the evidence in the case convinces me that plaintiffs did not prove their case by a preponderance of the evidence against the defendant Trebitz and his employer's insurer, Royal Indemnity Company. The plaintiffs did not sue their father's insurer Allstate, and Allstate should not have been cast for one-half of the judgment against Trebitz, Dooley and Royal on their third party demand for the same reason.
Trebitz said that the accident was not his fault because plaintiffs' father made a sudden lane change in front of him. Since Mr. and Mrs. Rodriguez were dead and no other witnesses were produced at the trial to give testimony on the subject, there was no one to disprove this assertion. In addition, the credibility of Trebitz was not shaken in the slightest, despite the noble effort of plaintiff's counsel to discredit him. In order to find Trebitz responsible, plaintiffs first had to start with Trebitz's own account of the accident. After eliciting from Trebitz certain factors of speed, time and distance, they called accident reconstruction experts to show that the accident was Trebitz's fault. The testimony of these experts was all very interesting but not proof of very much. One expert, taking Trebitz's own testimony of speed, distance, and the length of time necessary to change lanes, had him located far enough away from Rodriguez to show that he could have avoided the accident. Other experts gave testimony concerning whether the tail lights on the Rodriguez car were burning before the accident, and the majority of the Court reasons that the jury could have well believed Trebitz's experts (Doyle and Tonn) that the tail lights were out at the time of the accident, and therefore the jury was not manifestly erroneous in finding that Rodriguez's failure to have tail lights contributed to the accident. In my view, if we must strain that hard to justify the verdict of the jury, we might as well do away with our review of fact responsibility to determine if plaintiff has made out his case by a preponderance of the evidence and adopt the "any evidence rule."
*402 Assuming that this writer is in error and the evidence preponderates in plaintiffs' favor against Trebitz, the jury was absolutely in error in casting Allstate for one-half of the amount of the judgment. I agree with the statement of counsel for Allstate and the law cited in support thereof as follows:
"In those cases involving accidents between a passing motorist and a motorist changing lanes, wherein negligence is based upon the provisions of LSA-R.S. 32:79, it is logically and legally inconsistent to hold both of said motorists guilty of negligence."
For the above reasons, I respectfully dissent.