538 So.2d 1151 (1989)
Myriam Guidroz LEMIRE, et al
v.
NEW ORLEANS PUBLIC SERVICE INC. and Sewerage and Water Board of New Orleans.
No. 88-CA-1269.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 1989.
Rehearing Denied March 15, 1989.
Writs Denied May 12, 1989.
*1152 James P. Nader, Martzell, Thomas & Bickford, New Orleans, for plaintiff/appellant Myriam Guidroz Lemire.
Thomas Keasler Foutz, Gauthier, Murphy, Sherman, Chehardy & Ellis, Metairie, for plaintiff/appellant Leroy Guidroz.
John D. Lambert, Jr., Gerard M. Victor, Asst. Sp. Counsel, Sewerage and Water Bd. of New Orleans, New Orleans, for defendant/appellee.
Before BYRNES, LOBRANO and WARD, JJ.
LOBRANO, Judge.
This is an appeal from a judgment in favor of the plaintiffs, Myriam Guidroz Lemire and Leroy Guidroz in a wrongful death action against New Orleans Public Service (NOPSI) and the Sewerage and Water Board of New Orleans (S & WB). Before trial, plaintiffs settled their claim with NOPSI.
On August 7, 1981 at approximately 3:00 a.m. Charles Guidroz, plaintiffs' unmarried nineteen year old son, died when the car he was driving struck a S & WB backhoe which was parked in the left lane of lake bound traffic on Earhart Boulevard. The S & WB was repairing water mains for a two week period prior to the accident. The repair required excavation of a hole on the river bound side of Earhart Blvd. On the day before the accident, a backhoe was parked in the lake bound left lane of Earhart in front of a pile of mud which had been dug from the hole in the river bound lane.
According to Percy Mack, Sr. the supervisor of the job, it was customary to remove the mud at the end of the workday. *1153 On this particular evening it rained and no dump truck was available to haul away the remaining mud pile. Mack also indicated that it was his practice to erect barricades to warn traffic of the construction at the end of each work day. Previous to the accident, Mack noticed that many times when they returned to the job site in the morning the barricades had been knocked down or otherwise removed during the night.
Mack also testified that the bucket of the backhoe had been previously damaged and on the night of this accident he parked the backhoe with its shovel facing traffic to protect the equipment from damage.
Mack admitted that the S & WB had given him no written instructions as to how to place barricades to route traffic safely around construction sites but he stated that he had learned how to place such barricades from his former supervisor.
On the day of the accident Mack indicated that he barricaded both sides of the street using approximately 15 to 20 barricades on each side. The barricades on the lake bound side were situated beginning about a half block away from the parked backhoe.
Sergeant Horace Giroir of the New Orleans Police Department investigated the accident scene, arriving on the site approximately seven minutes after the accident. The decedent's vehicle was positioned inside the shovel of the S & WB's backhoe. The officer observed that the lighting in the area was poor as some of the street lights were out in the lake bound lane immediately preceding the backhoe. He observed the furthermost barricade from the backhoe with its light out leaning against the neutral ground. Another barricade situated closer to the backhoe also with its light out appeared heavily damaged apparently from a previous accident since it contained many rusted dents. He observed no other barricades.
Lisa Navarre witnessed the accident from her nearby third floor apartment balcony. She indicated that the decedent's car was traveling at a normal rate of speed, and it struck no barricades nor did it make any turns before it struck the backhoe's shovel. She indicated that all of the barricades had been previously knocked down. She went to the accident scene to offer assistance, heard the decedent moan and watched him succumb within minutes of the accident.
Duaine T. Evans, a consulting traffic engineer indicated that there were no advance warning signs of construction in the lake bound lane, and there were inadequate barricades to channel traffic out of the left lane where the backhoe was parked. He indicated emphatically that the backhoe should never have been parked in the left lane of traffic but should have been left in the parking lane or off the street entirely.
Claude Rice, a retired Sewerage and Water Board employee, testified that he drove on Earhart Blvd. on the morning of the accident in the riverbound lane. He indicated that just prior to the accident the area was properly barricaded. Herbert Lund, a retired New Orleans Police Officer, stated that he passed the scene several minutes before the accident. He was driving in the left hand lake bound lane, saw flashing lights and safely proceeded into the right lane passing the parked backhoe. The trial court, because of Rice's former position with the Sewerage and Water Board and Lund's friendship with a police officer assigned to the Board, gave their testimony minimal weight. The S & WB argues this was error.
Although the trial court has great discretion in assessing credibility, the reasons for discrediting a witness may be questioned. In this case, however, we find no error. A review of Rice's testimony shows many inconsistencies in time, and the location of alleged barricades. Particularly, it is clear he only gave a casual glance to the accident scene when passing. With respect to Lund's testimony, he was uncertain as to the number and placement of barricades. His testimony, when considered with that of the investigating officer and the eyewitness, is not so inconsistent as to support a "clearly wrong" judgment on liability.
Myriam Guidroz Lemire, mother of the accident victim testified as to her close *1154 relationship with her son, the youngest of five children, and the only boy. She and the decedent's father, Leroy Guidroz, were divorced when Charles was five years old. Her son lived with her from that time until he was twelve years old, at which time the decedent went to live with his father. When the decedent was fifteen, he again resided with his mother until his death at nineteen years of age. She spoke lovingly of her relationship with her son, revealing shared experiences, hopes and dreams for the future.
Leroy Guidroz visited his son three times a week after the divorce and supported his children. As previously mentioned, the decedent lived with his father when he was 12 to 15 years old. Mr. Guidroz also spoke lovingly of his son, and indicated a close personal relationship. Dr. Monroe Samuels, pathologist, performed the autopsy. He determined that the victim was intoxicated at the time of the accident. His opinion was based on a blood alcohol level of .21.
The trial court concluded that it was more probable than not that the decedent's reaction time was slowed and his perception of distance was distorted because of the level of intoxication.
The court determined that poor lighting and inadequate placement of barricades, as well as the decedent's intoxication were all contributing factors in the accident. In written reasons for judgment the court assigned 25% negligence to the decedent, 25% to NOPSI and 50% to the S & WB. The judgment, however, awards $200,000.00 to the plaintiffs against the S & WB, but fails to note the allocation of fault assigned in its reasons.
The S & WB now appeals assigning that the trial court erred (1) by failing to properly assess the blood alcohol level of the decedent; (2) by finding that the barricades were inadequate; (3) by its assignment of percentages of fault to the decedent because of his intoxication under the comparative negligence law, and (4) by awarding an excessive amount of damages.
Plaintiffs also appeal alleging that the 25% assignment of fault to NOPSI should be reassigned to the S & WB.
The issues for our review are factual. Appellate courts should not disturb a finding of fact unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Our review of the record satisfies this Court that the trial court's findings are not clearly wrong.
S & WB'S ISSUES (1) AND (3)
In civil matters, there is no statutory presumption of intoxication. La.R.S. 32:662; Whittington v. American Oil Co., 508 So.2d 180, 186 (La.App. 4th Cir.1987), writ den. 512 So.2d 436 (La.1987). The finding of a specific blood alcohol content standing alone is not evidence that an individual is not capable of operating a motor vehicle and does not preclude recovery for damages caused by the negligent acts of others. Id. Moreover, under a comparative fault system, the S & WB cannot escape its duty to the motoring public even though a motorist's own imprudent actions may have contributed to his injuries. See, Burge v. City Hammond, 494 So.2d 539 (La.1986); Gadman v. State, 493 So.2d 661 (La.App. 2nd Cir.1986).
The evidence shows that plaintiffs' decedent had a blood alcohol content of .21. The trial court reasoned that it was "more probable than not that this decedent's reaction time was slowed and his perception of distance perhaps distorted." We cannot say this determination is clearly wrong, and under our comparative fault system it was entirely proper for the trial court to allocate 25% of the fault for this accident to the decedent.
S & WB'S ISSUE (2)
The S & WB also claims that the trial court erred in finding that the placement of the barricades was inadequate.
The investigating officer found only two barricades after the accident, both unlit, one leaning against the neutral ground, the other heavily damaged from a previous accident. The only eyewitness clearly testified that she saw the decedent's vehicle *1155 proceed straight into the backhoe at normal speed without encountering any barricades whatsoever. Although Mack testified that he had placed 15 to 20 barricades at the site at the end of his workday, the trial court's finding that the site was not adequately barricaded at the time of the accident is again not clearly wrong.
S & WB'S ISSUE (4)
The S & WB claims that the amount of damages awarded, $100,000.00 to each parent, is excessive and out of proportion to awards given in prior cases under similar circumstances. In support of their position, S & WB cites Parks v. Liberty Mutual Insurance Co., 291 So.2d 505 (La.App. 2nd Cir.1974); Womax v. Earl Gibbon Transport, Inc., 226 So.2d 573 (La.App. 4th Cir.1969); Bailes v. Casualty Reciprocal Exchange, 279 So.2d 255 (La.App. 2nd Cir. 1973) writ denied 281 So.2d 747 (La.1973); Poston v. Fireman's Insurance Company of Newark New Jersey, 256 So.2d 700 (La. App. 2nd Cir.1972), writ denied 260 La. 1122, 258 So.2d 376; and Wright v. Romano, 279 So.2d 735 (La.App. 1st Cir.1973), writ denied 281 So.2d 757 (La.1973).
The plaintiffs appropriately point out that the cases relied on were decided 14 years ago or longer.
In a more recent case, this court affirmed awards of $200,000.00 and $225,000.00 to each parent for the mental anguish, grief, loss of love, affection and companionship of two teenage girls killed in a traffic accident. Whittington, supra.
An appellate court can only disturb an award made by the trial court if it finds an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). Where there is an abuse of the trial court's discretion, the scope of review is limited to lowering (raising) the award within the trial court's reasonable discretion. Id. Kuck v. City of New Orleans, 531 So.2d 1142 (La.App. 4th Cir.1988).
The trial court noted that the decedent was plaintiffs' youngest child and that he maintained a close and loving relationship with both parents throughout his life. We cannot say that the court abused its great discretion by awarding $100,000.00 to each parent for the death of their nineteen year old son.
NOPSI's FAULT
The trial judge apportioned 25% of the fault for this accident to NOPSI. The court reasoned:
"There was testimony from Ms. Navarre, and from Sgt. Horace Giroir, New Orleans Police Department, that several of the street lights along Earhart Blvd. were out. Sgt. Giroir testified that the lamps on light poles # 118 and # 119 were out on the east side. His opinion was that the poor lighting contributed to this accident."
Plaintiffs appeal this finding and assert that NOPSI's 25% fault should be reallotted to S & WB. They rely on Shafouk v. Bourgeois, 493 So.2d 112 (La.App. 5th Cir. 1986), writ denied, 497 So.2d 1013 (La. 1986).
Under a negligence theory there must be a showing that NOPSI knew or should have known the lights were not working, and that it failed to repair them. See, Norris v. City of New Orleans, 433 So.2d 392 (La.App. 4th Cir.1983) and the cases cited therein. The record is clear that no such showing has been made. Therefore, NOPSI's liability cannot be predicated on negligence.
However, we do find that Article 2317 is applicable. NOPSI is the custodian of the street lights. The fact that they were not operating is certainly a defect. The evidence supports the conclusion that the poorly lit street contributed to the accident. The purpose of street lights is obvious. They are intended to illuminate the pathway of the motoring public. When not functioning, it can be concluded that an unreasonable risk of harm may occur, especially under the facts and circumstances as presented in this case.
We therefore find no clear error in the trial court attributing 25% fault to NOPSI. To the extent that this holding conflicts with Shafouk v. Bourgeois, supra, we respectfully *1156 disagree with our brethren of the Fifth Circuit.
Accordingly, we affirm the trial court's allocation of 25% of the fault to decedent, 25% to NOPSI and 50% to the Sewerage and Water Board. We also affirm the award of $200,000.00, but amend the trial court judgment to reflect a reduction of 50% for the fault of decedent and NOPSI.
AMENDED, AND AS AMENDED AFFIRMED.